By the Court,

Cowen, J.
The question presented by this bill of exceptions is by no means free from difficulty. There are several cases which .clearly sanctioned the contract, looking at its face, so far as the mere loan of the sheep is in question. Stopping here, Spencer v. Tilden (5 Cowen, 144), is a stronger case in favor of the contract. There the contract was to double cows in four years, the whole to be at the risk of the borrower, which was admitted' by the lender to be at the time as good as 25 per cent interest. Holmes v. Wetmore (id. 149, note), held the same as to doubling sheep in three years (Cummings v. Williams, 4 Wendell, 679), repeated the rule as to doubling cows in four years, though the case, it was agreed, presented a greater certainty as to profit than Spencer v. Tilden. The Vermont statute of usury excepts from its operation this customary dealing among farmers; but even without such an exception, it seems, their courts would feel [282] themselves warranted in denying the application of the statute (Whipple v. Powers, 7 Verm. R. 457).
In the case at bar, the sheep were loaned for one jrear certain; and so from year to year, so long as the lender chose, with a stipulation to return the same number, of the same quality and age, as nearly as possible, on one year’s notice. So far there could be no chance of profit, except the rise of value in market; and there might be considerable loss from the depreciation in value. The direct and certain income lay in the fifty cents per head, which is conceded to have been more than seven per cent, on the cash value at the time of the loan; and this is the only feature by which the case can be distinguished from those already decided. With this, we must connect the fact offered to be proved, that wool from sheep, like those in question, was worth §1 per pound, and that a pound of wool was the accustomed rate of compensation for the use of a sheep for one year (see Ord on Usury, 58, 9).
It appears to me that there is a series of cases in point, with regard to like. dealings in other property, against this transaction being considered usurious per se. Here are, doubtless, several ingredients tending to the *161 proof of usury. The case is not a mere hiring or renting of personal property, to be used and specifically returned; but I understand the title to have passed. The defendants might have sold these sheep the day after the contract. They were bound merely to make a return in kind. The principal was to be kept good at their risk, so far as number, quality and age were in question, they paying more than seven per cent on the value at the time of the loan (see Ord on Usury, 25, 26, 27, 28). But I do not understand it to differ in principle from the cases respecting the loan and replacing of stock, and of final settlement certificates. A loan of stock, though it he understood that the defendant is to sell it, and it be sold and turned into cash, and used by the borrower for his own purposes as a loan of money to pay his debts, may lawfully bring the lender the amount of the current dividend as it stood at the time of the loan, though it be more than seven per cent, or other rate of legal interest. This has been held ever since the case of Tate v. Wellings (3 T. R. 531). In such case, eight per cent or more, according the known dividend which the stock brings, is stipulated for by the way [283] of interest, till the stock shall be replaced, and the parties fix the time. In Tate v. Wellings, the time was certain; but I am not aware that the principle is necessarily varied, if it be made to depend on the pleasure of the lender, as in the case at bar. It did so depend in Tate v. Wellings, after the first year; indeed the plaintiff had his election after that, whether he would allow the stock to be replaced at all, and in the result, it stood as a loan of money at eight and a half per cent. In that case, the justices of the king’s bench all agreed, and Ashurst and Buller, justices, declared the ground to be, that the plaintiff took the risk of the stock rising or falling in market. Therefore, when it came to be restored, he might have found himself worse off than if he had sold out and investee! the money at once on five per cent interest. The case of Hamlin v. Fitch (Kirby, 260), was a still stronger case. There, on a loan of §16,839 of final settlement certificates, to be repaid in the same kind and amount at six months, the lender stipulated for the receipt of §1000, besides the lawful interest. These certificates were notoriously in a rapid course of depreciation; and the court sustained the contract. They suppose and sanction a loan of 100 bushels of salt, under a stipulation to repay 106 bushels [107 bushels] at the year’s end, and even a sum of money besides, provided both of them might not amount to more than the value of the loan at 6 per cent [7 per cent] interest. Dyer and Pitkin, justices, dissented, upon the express words of the statute, which like that of New York (1 R. S. 760. 2d ed.), prohibited the loan of other articles as well as money; and they denied that where the principal is to be made good in kind, more than the legal rate of interest could be reserved under pretence of indemnity for depreciation. A majority of the court, however, held that the contract, though in the form of a loan, was really in nature of a speculation and bargain of hazard. This principle of hazard in the depreciation was extended to a very improbable fall of stock, in Pike v. Ledwell (5 Esp. R. 164). The plaintiff loaned ¿6160 on a contract to transfer to him ¿C400 in three per cent consols, at the end of nearly three years. The consols were [284] worth ¿6240 at the time of the bargain, and ¿6225 at the expiration of the credit, so that the plaintiffs recovered ¿680 beyond the loan. Lord Ellen-borough gave as a reason, that there was a possibility of the stock depreciating to the ¿6160 (Madock v. Rumball, 8 East, 304), is the same in principle. And see Wilson v. Kilburn (1 J. J. Marsh, 494).
Mr. Comyn remarks, that to make such cases usurious, the exact value of the stock to be replaced should be estimated by the parties, so that all is certain and nothing contingent (Comyn on Usury, 114). In the principal case, had the contract been to restore sheep, not only of the same number, quality and age but also of the same value, it would clearly have been *162 usurious pet se. So, if it had stood at the legal principal and interest, with a chance at the same value of making it more in the election of the plaintiff (Barnard v. Young, 17 Ves. 44; White v. Wright, 5 Dowl. & Ryl. 110). In these cases, the original cash value of the stock with five per cent, was secured at all events, with a chance by electing to have the stock replaced of getting more.
Now, it is certainly not to be denied, that in any of the cases cited, had the transaction been conducte.d with the view to cover up a usurious loan, all would have been void, and that is agreed from Tate v. Wellings down to Madock v. Rumdall; and it is somewhat surprising, that it was not put to the jury on that question, in Pike v. Ledwell. But we can not pronounce on the usury as an inference of law, till we see that an equal value is secured as principal, together with the usurious interest, or some usurious advantage in addition. No doubt, that in any of the cases decided by this court, had the jury found the doubling of the cattle or sheep to have been a mere shift for evading the statute, those contracts would have been adjudged void; and a finding of the jury seems to me to be the true way of settling such questions.
The court below held that the giving of fifty cents per annum, under this contract, for a sheep worth less than the cash principal of that sum [285] avoided the contract, independent of all questions as to present value or depreciation. The fall in market might have led the plaintiff to exercise his right of election unfavorable for the defendants. Whereas, there could be no ground for unreasonable delay, if sheep had continued as valuable as the plaintiff proposed to show they were at the time. Again, they might have suddenly risen in the market,,so that the rent should have been more; and yet, before the year’s notice could call them in, have fallen to very little. This whole arrangement may well be regarded, like the case of the final settlement certificates, or the salt, as a mere bargain of hazard, or the jury might well have pronounced it a fraud on the statute for aught I know. I think their opinion should have been taken, and that therefore the judgment should be. reversed, and a venire de novo be issued from the court below, the costs to abide the event.