FELLOWS v. THE AMERICAN LIFE INSURANCE and TRUST COMPANY.

A loan of money made on condition that the borrower shall sell to the lender, real estate of a speculative and contingent value, for cash, to the same amount as the loan, which real estate is worth at the time no more than the sum agreed to be paid for it; is *not usurious*, although both the lender and the borrower then expected that it would greatly increase in value.

If the agreement had been, that the lender might take the real estate, or receive the stipulated price with interest, at his option at a future day; the contract, *it seems*, would have been usurious.

On the proofs, held that the sale was not imposed as a condition of the loan.

Auburn, Oct. 26, 1843; New-York, Jan. 25, 1844.

THE bill in this cause was filed to set aside a bond as usurious, which had been executed by J. and S. V. R. Bogert to one Van Brunt, and by him assigned to the defendants. One of the complainants signed the bond as a surety, the other guaranteed its collection.

The bill states that the Bogerts in 1836, being the owners of an undivided interest in Michigan city, in the state of Indiana, which they estimated very highly, and which Van Brunt likewise considered very valuable, and likely to increase rapidly in value, were in want of money, which was well known to Van Brunt. That they applied to him for a loan of $5000, and he

agreed to lend them that sum, on condition that they would sell to him for $5000 in cash, one quarter of their undivided interest in Michigan city. They accepted the terms, and the bond in question was thereupon executed, the $5000 loaned, and the Bogerts gave to Van Brunt a transfer of the Michigan city interest, for which he paid them $5000 more. Some other facts are mentioned in the opinion of the court.

*A. Worden,* for the complainants.

*W. H. Seward,* for the defendants.

THE ASSISTANT VICE-CHANCELLOR.—In the case of *Morse* v. *Hovey* and *Cloyes*,(*a*) heard at this term, I decided that a discharge under the late bankrupt act, reached the claims of sureties for the bankrupt, although they had not been called upon or damnified at the date of the discharge.

James and Stephen V. R. Bogert were therefore competent witnesses for the complainants, and the objection to their testimony is overruled.

The usury set up in this case is novel. We have instances in abundance of attempts by lenders to evade the statute by imposing upon the borrower as a condition of the loan, the purchase from the lender at an exorbitant price, of goods, lands and things in action. In *Cleveland* v. *Loder*, (7 Paige's R. 557,) the lender, after securing with certainty the repayment of his money with interest, stipulated for the right to retain in lieu of payment, when the loan became due, the stock by which it was secured, at a fixed price. The parties expected the stock to rise in value in the mean time, so that by the agreement, if the stock rose above the price fixed, the lender could take that for his loan, thus realizing more than seven per cent. If it did not improve in value, he would receive his money and interest. Without making any loss, he secured the chance of a large profit beyond the lawful interest. In *Boldero* v. *Jackson*, (11

(*a*) Ante, page 187.

East, 612,) the consideration of the loan of £25,000 to the defendant, was his agreement to purchase and transfer to the plaintiffs in payment thereof, £50,000 of government stock, and to pay them the dividends in the mean time. At the date of the contract, the stock was selling at 51 1-4 per cent., or 1 1-4 more than the plaintiffs were to allow for it. The transaction was conceded to be usurious by the counsel. In that case there was at the time of the loan, a moral certainty that the amount to be repaid would exceed the loan and lawful interest.

In *Morse* v. *Wilson*, (4 T. R. 353,) the principal sum and interest was to be paid at all events. There was a contingent provision for a further payment; and in this respect it was in principle, like *Cleveland* v. *Loder*.

*Barnard* v. *Young*, (17 Ves. 44,) was like *Cleveland* v. *Loder*, in its circumstances, and Sir William Grant held the contract to be usurious, on the ground that it reserved the capital with legal interest upon it, and likewise a contingent advantage, *without putting either capital or interest in any kind of risk*.

The case under consideration differs from all of these.

Assimilating it to *Cleveland* v. *Loder*, and *Barnard* v. *Young*, the money advanced, the loan, was ten thousand dollars. Of this sum, five thousand was secured, and the remainder put at hazard, both the principal and interest The case of *Boldero* v. *Jackson*, is the nearest to it. But there, when the contract was made, the stock was worth more than the money and interest. Here the stock or land scrip, taken for one half of the advance, was not worth more than the sum paid for it. Its value at that time was wholly speculative. The lender paid the Bogerts $5,000 for one fourth of one tenth of nine tenths of a paper city, on the shore of Lake Michigan. Three months before, the Bogerts had bought the same land for $2,500. Four or five years after, it was valued by one of the proprietors at $625, and could not be sold at any price. I mention these facts merely to illustrate the truth of the testimony of one of the witnesses, who bought one tenth of the city in 1836, and who says that its value was speculative, and that the *whole property* was then intrinsically worth about $22,000.

The distinction between the unconditional purchase of such a bubble, at its then estimated value ; and the stipulation by the lender for the benefit of its contingent rise, while he hazards nothing on his part, is too manifest to require further illustration.

The case appears to come within the principle, that where the loan is attended with some contingent circumstance by which its repayment is put in evident hazard, it is not usurious although it may result in a profit beyond the legal rate of interest. If Van Brunt anticipated a rise in the value of the land scrip, he also took the *whole risk* of its falling and becoming worthless, and he paid its full value at the time. See *Colton* v. *Dunham*, (2 Paige's R. 273,) and *Hall* v. *Haggart*, (17 Wend. 280,) where the cases are collected and examined.

If the bill were fully sustained by the evidence, I should hold the contract not to be usurious.

A careful examination of the testimony satisfies me that the case made by the bill is not proved.

It turns wholly upon the condition exacted by Van Brunt on making the loan of the $5000.

It is proved that on a previous application for a loan of $3000, Van Brunt expressed his willingness to lend it, provided the *Bogerts* would sell him a part of their Seneca County Bank stock. Here there was a condition. But when Bogert promptly acceded to it, and offered the stock, not at its value, but at par, which was 12 or 15 per cent. less than its value ; Van Brunt declined, and said that such a bargain would be usurious. It does not appear that he in that instance proposed to pay for the stock less than its market value, and this affair furnishes no ground for an inference in respect to the subsequent loan. When the loan in question was made, S. V. R. Bogert, without any farther conversation on his part in reference to the Michigan city property, or by either of the Bogerts, in reference to a loan in connection with that property, went to Van Brunt and offered to sell him one fourth of their interest in that property for $5000, if he would lend them $5000 more, and Van Brunt at once accepted the offer. Had money been as abundant then as it is now in this city, it would have been the imposing of a condi-

tion by the Bogerts on Van Brunt, in order to their taking the loan of $5000 at seven per cent.

This is the positive proof, and it shows no condition imposed by the lender. Nor is there evidence to show that he had declined to loan previously on any other terms except this sale, or that he had so talked or conducted as tacitly to impose this condition upon the Bogerts. All that James Bogert relates of his previous conversations with Van Brunt respecting Western lands and this property in particular, are consistent with the fact that Van Brunt already owned such lands and desired to make further investments, without necessarily leading to the inference which Mr. Bogert appears to have formed, that Van Brunt was lying in wait to compel them to sell to him a part of this property, at only one hundred per cent. advance.

Without going into a minute examination of the testimony, my conclusion is that it does not prove that Van Brunt imposed the sale upon the Bogerts as a condition of the loan.

On both grounds which I have discussed; my opinion is adverse to the complainants, and their bill must be dismissed with costs.