GaRDIneb., J.
 

 According to the contract stated in the bill of exceptions, the parties had in view a loan of cattle, with liberty to the borrower to convert the loan into a sale, at the times, and upon the terms, prescribed in the agreement. During the continuance of the loan, and until the defendant made his election, he was to pay a stipulated sum, exceeding seven per cent., for the use of the property, which was to remain at the risk of the lender, for the times specified, as to all accidents, not arising from the negligence or misconduct of the
 
 *298
 
 former. This, I apprehend, is the true meaning of that clause in the contract, by which the plaintiff “was to sustain all losses that shall appear to be providential.”
 

 The agreement, in a word, contemplated a loan of chattels; and whether the compensation fixed by the agreement, did or did not exceed seven per cent, per annum upon their value, was immaterial, as the subject of the loan was not within the statute in relation to usury. This has been frequently decided, in effect, and was so held by this court, in the
 
 Dry Dock Co.
 
 v.
 
 American Life Insurance and Trust Co.,
 
 3 N. Y. 344, and cases there cited; Ord on Usury 26; 17 Wend. 280; 4 Id. 680; 5 Cowen 144.
 

 In
 
 Hall
 
 v.
 
 Haggart
 
 (17 Wend. 280), sheep were loaned; *and by the contract, the same number were to be returned, of the same age and quality, with interest from fifteen to twenty-five per cent, upon their cash value. In
 
 Cumming
 
 v.
 
 Williams
 
 (4 Wend. 680), a heifer was loaned, at an interest of twenty-five per cent., to be paid in
 
 hind.
 
 The lenders, it will be perceived, in these cases, were to receive the capital loaned,at all events, with more than seven per cent, per annum for its use. This would have been usury in a loan of money, beyond question. It would have been usury in a loan of chattels, also, if they were within the statute; and yet both contracts vrere pronounced valid by the supreme court; and the soundness of the decisions is" not questioned by the court below.
 

 It is said, that those cases proceed upon the ground that the value of the kind of property mentioned in the agreement was fluctuating; so is the value of all other commodities, money included. The variation may be less, at different periods, in the case of money, than of any other properly, it is true. This may be a good reason, why other property should be excluded from the statute, and that legislation should be limited to loans of money exclusively, but it is no reason whatever, for
 
 *299
 
 applying one rule to a loan of chattels, and another to a similar contract in relation to money, when it is claimed, that both are regulated in the same terms by the same statute. Now, in establishing a rate for the use of money, the law assumes that its value is fixed and will remain unchanged, during the period of the loan; or, at least, that it will not appreciate, so that its use will be worth more than the compensation allowed by law.
 

 The presumption, however contrary to the fact, cannot be rebutted by evidence. If loans of sheep or merchandise are embraced by the statute, the same conclusive presumption must be applicable to them; and consequently, a contract for the loan of one hundred sheep, for one hundred and ten, to be returned at the end of the year, would be usurious on its face, precisely as though the subject of the agreement had been the same number of dollars. Nor would evidence of *the custom among farmers, or of the value of wool, or the probable profit of the borrower, be any more admissible, than the custom of brokers, or proof that money, at the time of the loan, was worth three per cent, a month, to justify a contract exacting more than seven per cent, interest. Yet, in cases of chattel loans, this evidence has been constantly received, and in
 
 Hall
 
 v.
 
 Haggart,
 
 a new trial was granted, because it was excluded. The decision can only be sustained upon the ground that usury cannot be predicated of a loan of chattels.
 

 Such loans may be resorted to as a cover for usury, and so may a contract for the sale of lands. And it is believed, that the apparent confusion in some of the cases, has arisen from not discriminating between a loan of chattels, and evidence
 
 tending
 
 to prove such a contract in form, a mere cloak for an usurious loan of money.
 

 It is claimed, that the present is distinguishable from the cases cited from Wendell, because the borrower is
 
 *300
 
 bound to return property of a stipulated value, which is assumed to be the same with that of the property loaned. If the assumption was well founded, of which there is no proof, there would be no force in the distinction, unless it could be shown, that the plaintiff loaned the value of the cattle, instead of the cattle themselves. This would, in effect, make it a loan of money, disguised under the form of a loan of chattels But any such device is negatived by the verdict of the jury; and the valuation, consequently, was merely descriptive of the quality or number of the cattle to be returned, and to regulate the amount to be paid, in case the defendant availed himself of the option given him by the agreement, to purchase the property. Without considering the other questions presented, upon the ground that this was a loan in fact, as well as in form, the subject of which is not within the provisions of the statute against usury, the judgment of the supreme court must be reversed, and that of the recorder’s court affirmed.
 

 Judgment reversed, and that of the recorder’s court affirmed.