## WALTON GUANO COMPANY *v.* COPELAN.

| 112 | 319 |
|---|---|
| 117 | 122 |
| 117 | 858 |

| 112 | 319 |
|---|---|
| 119 | 9 |
| 119 | 193 |

| 112 | 319 |
|---|---|
| 121 | 10 |

| 112 | 319 |
|---|---|
| 122 | 803 |
| 112 | 319 |
| 124 | 1049 |

| 112 | 319 |
|---|---|
| 127 | 737 |

1. It is no defense to an action on a promissory note, that the maker relied on certain representations made by an agent of the payee at the time of its execution, and that it did not contain the contract as actually made ; the note not having been signed under any emergency, and there being nothing to prevent the maker from reading it, and it not being shown that the failure to read it was brought about by an actual fraud perpetrated by the agent of the payee at the time of its execution.
2. A written contract stipulating for the payment of a stated sum of money on a given day, but containing a provision that the " obligation may be discharged " at or before maturity of the indebtedness by the delivery of a designated article of merchandise at a stated price, was not usurious upon its face.
3. The evidence in the present case did not authorize a finding that the transaction entered into between the parties and evidenced by the instrument sued on was a scheme or device for the purpose of evading the laws against usury.
4. The court erred in refusing to grant a new trial.

Argued November 9,—Decided November 28, 1900.

Complaint. Before Judge Hart. Greene superior court. February term, 1900.

*James Davison,* for plaintiff.　*Samuel H. Sibley,* for defendant.

Cobb, J. The Walton Guano Company sued Copelan in the county court, and the case was carried by appeal to the superior court. The action was on a promissory note in which it was stip-

ulated that the indebtedness might be discharged in cotton of a designated grade, in merchantable bales, at ten cents per pound, if delivered at or before the maturity of the note.    The defendant filed an answer in which it was set up that the consideration of his signing the paper sued on was the sale by the plaintiff to him of certain guanos to be paid for with a certain number of bales of cotton, and that the incorporation of a promise to pay money instead of cotton was by accident, or mistake, or for the purpose of defrauding the defendant, and without his knowledge or consent, the agent of the plaintiff having written the note; and that the defendant relied on him to conform to the agreement, and did not know that such was not the case until the suit was brought.    He admitted that he was due the plaintiff the sum of $50.40, and tendered the same.    He further pleaded that the right to discharge the note by the payment of cotton before maturity at the rate of ten cents per pound was a device to evade the laws against usury.    At the trial the defendant testified, in substance, that he and the agent of the plaintiff entered into an agreement for the purchase by him of a certain quantity of guano; that the defendant said that he never paid money but always paid in cotton, and the agent agreed to receive cotton; that nothing was said about giving a money note and allowing the defendant to pay for it in cotton at ten cents per pound; that the agent of the plaintiff came to him and said, " I have got your note; just sign it, and save me any further trouble," and the defendant told him, "All right," and signed it; that he thought the plaintiff's agent would do what was right, and thought he had made the note out right; that he never knew that the note was a money obligation until he went to settle it in the fall.    The jury returned a verdict in favor of the plaintiff for $44.    The plaintiff made a motion for a new trial, which being overruled, he excepted.

1. Was there evidence sufficient for the jury to find in favor of the defendant on his plea of fraud?    In *Bostwick* v. *Duncan*, 60 *Ga.* 383, it was held that if a person signed a written agreement without reading it, and it did not contain the contract as in fact made, parol evidence was not admissible for the purpose of varying its terms.    Mr. Chief Justice Warner in the opinion took occasion to remark:    " It is not the duty or business of the courts to relieve parties from their gross negligence in making their contracts.    Besides, in these days of hard swearing, when every man is a com-

petent witness to swear for himself in his own case, the rule that parol evidence is not admissible to vary or contradict written contracts should not be relaxed." In *Dyar* v. *Walton*, 79 *Ga.* 466, it was held that: "Gross errors committed in a settlement not intended by the debtor to be final, but nevertheless consummated by executing notes and mortgages for definite amounts, bearing interest from date, with ten per cent. for attorneys' fees, will be attributed by a court of equity, not to mistake, but to gross negligence." In *Radcliffe* v. *Biles*, 94 *Ga.* 480, it was held: "One who executes and delivers a promissory note without reading or knowing its contents can not avoid liability thereon because he acted ignorantly, without showing some justification of his ignorance, either by reason of his inability to read or by some misleading device or contrivance amounting to fraud on the part of the person with whom he was dealing." In *Boynton* v. *McDaniel*, 97 *Ga.* 400, it was held: "It is no defense to an action upon a promissory note that the maker, relying on certain representations made by another at the time of its execution, signed the note without reading it, and that it did not contain or express the contract as actually made, the note not having been signed under any emergency, there being nothing to prevent the maker from reading it, and no sufficient excuse for failing to do so being alleged." See also *Jossey* v. *Railway Co.*, 109 *Ga.* 439; *Angier* v. *B. & L. Asso.*, 109 *Ga.* 625.

In *Chicago Co.* v. *Summerour*, 101 *Ga.* 820, the facts relied on for the purpose of avoiding the effect of a written instrument which had been signed without reading it were very similar to those in the present case. There the defendant testified: "At the time I signed the paper I had it in my own hands, folded as above stated. There was nothing to keep me from reading it, if I had wished to do so, or had thought it necessary. I thought Bowman would do what he promised, or I would not have had anything to have done with him." It was held that as the defendant negligently omitted to take such precautions as would reasonably have served to protect him against the imposition claimed to have been practiced upon him, he was bound by the contract as executed. In the present case there were no misrepresentations made by the agent of the plaintiff at the time the note was signed. There was no trick or device by which the defendant was induced to sign the paper. He had full opportunity to read the same, and nothing done by the

plaintiff's agent prevented him from doing so.   Nor was there any emergency which required haste, though an emergency of the defendant's own creation would, of course, not have availed him as a defense.   The only excuse offered by him for not reading the note was that he relied upon the agent of the plaintiff to have the note drawn in accordance with the prior agreement made with him.   If the defendant has signed a contract which does not express the terms of the agreement entered into between him and the plaintiff, this is due to his own gross negligence in failing to use the precautions which an ordinarily prudent man would have taken advantage of; and the courts will give him no relief; he must abide by the contract as executed.   This ruling is in direct line with the decisions above cited, and we think no case decided by this court will be found to be in conflict with it.   In *Angier* v. *Brewster*, 69 *Ga.* 362, the plea alleged that the defendant objected to signing the note with certain stipulations in it, and the plaintiff's agent agreed to strike out the stipulations and with his pen made an erasure therein; and after this was done the defendant signed the note without reading it, relying upon the conduct of the agent as evidence that the objectionable matter had been eliminated, when in fact it had not been, the agent having erased other words and left in those objected to.   Upon demurrer it was held that the plea set forth a good defense to the action and could be sustained by parol.   In that case the conduct of the agent amounted to such a trick or device as would be sufficient to throw even a prudent man off his guard. In *Brooks* v. *Matthews*, 78 *Ga.* 739, the plea alleged that the paper was signed without having been read, for the reason that the plaintiff read the same over to the defendant in such a way as to leave the impression upon his mind that it contained the contract as agreed on, when in fact it did not.   It was held that the allegations of this plea made a case of actual fraud, and that, if they were established by evidence, the defendant would not be bound by the terms of the instrument signed.

In *Chapman* v. *Guano Co.*, 91 *Ga.* 821, the plea alleged that the real contract between the parties was for the payment of $53.10, and that the contract as drawn provided for the payment of $90.20 ; that the defendant signed the contract without reading it, but that the signing was done at night when the defendant could not well see, and he was informed by the plaintiff's agent that it represented

only the indebtedness actually intended to be incurred by the defendant, and upon that representation the defendant signed it. In the opinion Mr. Justice Lumpkin, speaking for the court, said: "We think the pleas contain enough to authorize the case to be submitted to the jury, and allow them to determine whether or not a fraud was actually practiced upon the defendant;" and also stated that the question dealt with was not "free from doubt or difficulty." In *Wood* v. *Cincinnati Safe Co.*, 96 *Ga.* 120, the plea alleged that the failure of the defendant to read the paper before signing the same was due to the fact that when it was presented to him by the agent of the plaintiff the defendant said, "What is it? Let me read it." The agent replied, "It is only an agreement that if you take the safe, it is to be ours until paid for. You haven't time to read it. I will send you a duplicate to-morrow. I have told you all that is in it. Sign it; I have to catch that train." And, relying upon this representation as to the contents of the paper, the defendant signed it. It was held that the conduct of the agent amounted to such a fraud upon the plaintiff that he was entitled to be relieved against the same, and that the emergency created by the agent for the purpose of obtaining the defendant's signature to the paper without reading it relieved him from the charge of negligently signing a paper without acquainting himself with its contents. In *McBride* v. *Publishing Co.*, 102 *Ga.* 422, the facts were very similar to those in the case just cited, and the defendant was let into his defense under the ruling there made.

2. The contract sued on was not usurious upon its face. While the money obligation undertaken might be discharged by the delivery of cotton at a designated price at or before the maturity of the note, the plaintiff took the risk of a fluctuation in the market value of this commodity. In addition to this, the maker of the note was to determine whether the money obligation should be discharged in cotton; the payee of the note, under the terms of the instrument, not having the right to compel the delivery of cotton, if the maker saw fit to discharge the debt by the payment of money. If at any time between the date of the note and its maturity cotton had a market value which would have made the number of pounds stipulated for in the contract worth more than the principal of the note and interest calculated at the highest rate allowed by law, the plaintiff would have reaped the benefit of this

increased value of the cotton, provided the defendant elected to deliver the cotton in discharge of the note, which is hardly to be presumed. On the other hand, if the price of cotton depreciated and it was worth less than ten cents per pound, the plaintiff would be compelled to receive the cotton in discharge of the obligation, at the agreed price. In Sharpley v. Hurrel, 3 Cro. J. 208, it appeared that a ship went to fish in Newfoundland, which voyage might be performed in eight weeks. The plaintiff delivered fifty pounds to the defendant, who agreed to pay back sixty pounds upon return of the ship to Dartmouth, and if the ship, by reason of leakage or tempest, did not return from Newfoundland to Dartmouth, the defendant was to pay only the sum delivered to him, viz., fifty pounds; and if the ship never returned, the defendant was to pay nothing. It was held by all of the court not to be usury within the statute, "for if the ship had staid at Newfoundland two or three years, he should have paid at the return of the ship but sixty pounds; and if the ship never returned, then nothing; so that the plaintiff ran an hazard of having less than the interest which the law allows, and possibly neither principal nor interest." In Stevenson v. Unkefer, 14 Ill. 103, the note sued on was payable "in Baltimore bank notes, with twelve and one half per cent. interest." The defendant pleaded that the contract sued on was usurious; and the court held that when the creditor takes a risk, by which he runs the hazard of losing the principal sum, or of taking less than the sum originally due, with lawful interest, it is not usurious for him to stipulate for or to receive more interest than is prescribed by the statute. Caton, J., in the opinion says: "In the case before us, there was, no doubt, a palpable and substantial risk run by the payee of the note. The maker had a right to discharge the debt in Baltimore bank notes, at their nominal value, and in this action no more than their real value could be recovered. Dunlap v. Smith, 12 Illinois, 399. It is not necessary now to say whether it was the right of the payor to make the payment in the most depreciated of those notes, had there been a difference in their value, or whether he would have been liable to the extent of the most valuable. It is enough to know, that, like everything else except money, their value was liable to fluctuate, and that in the course of commercial changes they might become greatly depreciated, if not almost valueless, in the market by the

end of the three years for which the credit was given, so that the lender would lose more than the whole interest agreed to be paid. With such a contingency, the authorities are uniform, that the excessive interest stipulated for did not infect the transaction with usury." Mr. Webb, in his work on Usury (§ 42), says: "Where the payment of the principal sum depends upon the happening of any contingent event or is put at hazard in any manner, the transaction is not amenable to the usury laws and more than legal interest may be charged. There is no usury where the principal is placed in jeopardy by the terms of the agreement. To carry the case beyond the usury statute, however, the hazard or contingency must be *bona fide* and not a mere color of a risk or such possibilities of unexpected loss as might occur in the ordinary course of the borrowing and lending of money." · See also Tyler, Usury, 172 et seq.; Spencer *v.* Tilden, 5 Cowen, 144; Cummings *v.* Williams, 4 Wend. 680; Hall *v.* Haggart, 17 Wend. 280. As the instrument sued on in the present case upon its face appeared to be an obligation to pay a fixed sum of money, which it is to be presumed was due by the defendant to the plaintiff, and as the stipulation in the note provided that this amount might be discharged at the option of the defendant by the delivery of an article of merchandise subject to fluctuation in price, and as no interest was to be paid upon the amount until after maturity, the plaintiff incurred the risk of losing at least a part of the principal of his debt in the event that cotton was, on the day of delivery, worth less than the face of the note.

3. There was nothing in the evidence to authorize a finding that the transaction involved in the present case constituted a scheme or device for the purpose of evading the laws against usury.

4. The verdict rendered was contrary to the evidence, and should have been set aside.

*Judgment reversed. All the Justices concurring.*