### 21882. HAWKINS v. ADAMS.

DECIDED DECEMBER 15, 1931.

*R. C. Jenkins,* for plaintiff in error.
*Miles W. Lewis, S. T. Wingfield,* contra.

LUKE, J.   W. H. Adams sued J. N. Hawkins upon a promissory note evidencing the amount of purchase-money agreed to be paid by Hawkins to Adams in connection with an exchange of used automobiles.   Incorporated with the note is an agreement for the retention in Adams of the title to the automobile purchased by Hawkins, until payment of the purchase-money in full, as well as a provision for waiver of homestead and exemption rights, and other usual stipulations.   The prayer of the petition is for judgment for the principal of the note, interest, and attorney's fees, and for a special lien on the automobile described therein.

Hawkins filed an answer denying all liability upon his promissory note and alleging, by way of defense, that certain false and fraudulent representations were made to him by the agent and representative of Adams with respect to the mechanical condition of the automobile purchased by him.   He alleged that he relied upon and acted upon these representations, and that, as soon as he discovered the alleged fraud upon him, he offered to rescind the contract, and that this offer was met with refusal.   The answer set up a counter-claim, for which judgment was asked— (a) the difference in value in his favor as between the two cars; (b) damages as attorney's fees expended in the present action; (c) and damages for the loss of the use of the automobile that he originally owned.   The answer then declared the defendant's willingness to cancel the whole transaction, by a re-exchange of automobiles, upon condition that the car that he originally owned was in as good mechanical condition as it was at the time of the execution of the note.

Upon the filing of this answer, Adams amended his petition, and, by way of answer to the defendant's countersuit, denied that either he or his agent made any statements, representations, or agreements other than those contained in a written agreement of the defendant, under which the defendant purchased the automobile from the plaintiff without warranty as to its condition, the only warranty being that of good title and the right to sell, the said automobile being a used car.   This agreement was incorporated in the amendment.   Hawkins then filed an amendment to his answer, in which he elaborated the defense set up in his original answer, and alleged that latent defects existed in the automobile purchased by him from Adams, and that such were not discovered by him at the time the agreement was signed; that he relied upon the "representations

and warranty made to him by the plaintiff" as to the condition of the automobile, on account of the confidence, trust, friendship, and past business relations between the same parties; that he relied upon the implied warranty provided by the Civil Code (1910), § 4135; and that "on account of the fraud and deceit practiced upon him, . . and on account of the failure of consideration herein referred to, said obligations sued upon are not binding upon him." His answer then proceeded, more or less specifically, as follows: "That at the time said alleged order for the Buick car was given, this defendant did not examine the same, and was not given a chance to examine the same, but that the agent of the plaintiff,— John Byard, told this defendant that said order amounted to 'just to take said car in the event that it was as represented by him;' that he would let this defendant sign the order for the car, and see him later about closing the trade finally; that this defendant, for that reason, and for the additional reason that he had the utmost confidence in the said agent of the said plaintiff, did not read the said order, for that at said time this defendant was at work in his place of business and informed the agent of the plaintiff that he did not have time to go into the car trade then, but would later." Again, the answer enlarged upon these allegations, and charged: "that had this defendant known the contents of said order he would not have executed the same, . . that the agent for the plaintiff suppressed the terms of said order from the defendant, as well as the truth as to the condition of said car, . . and that said agent of said plaintiff wilfully misrepresented both the contents of said order and the condition of said car to this defendant, and hence defendant was induced to sign said order for the car, and the other agreement sued, by fraud, deceit, and deception, as fully set out herein, and said contract and order is not binding on him, and should not be enforced." We have set out the allegations of the defendant's answer at considerable length, not, to be sure, in any reckless disregard of the printer's charges, but in the earnest hope that another wayfarer choosing a route may not be tempted to travel by the same detour.

The plaintiff demurred to the answer as amended, and the demurrer was sustained, the answer stricken, and verdict directed and judgment rendered in favor of the plaintiff for the amount of the promissory note, interest, attorney's fees, and costs, with a special

lien and claim on the property described in the petition; and the defendant excepted.

From the brief of counsel for the defendant we take it that each of his several theories of defense is relied upon, viz.: failure of consideration; breach of both express and implied warranties; and fraud in the procurement of the contract. He pins his hopes to the case of *Barfield* v. *Farkas,* 40 *Ga. App.* 559, 560 (150 S. E. 600); but, if we correctly interpret the opinion in that case, the defendant must turn elsewhere for consolation. In a written agreement, or order, signed by the defendant in the case at bar, and referred to in the pleadings, is an express stipulation that the seller will warrant the title, but gives "no warranty except as to title." It further provides that "no agreement, either express or implied, shall be binding upon the seller unless incorporated therein and signed by the seller;" and "it is further understood that this order becomes a part of the deal." It is quite clear then, in these circumstances, that the defenses of failure of consideration and breach of warranties are precluded by the terms of the written order or agreement, in the absence of a sufficient showing, by averment of specific facts, that the signing of the order or agreement by the defendant was procured by fraud.

What are the facts alleged in the answer which, if taken as true, are sufficient to avoid the order or agreement by reason of fraud in its procurement? Defendant says he was busy, at work on his books; that he did not have time to read the order; that he wanted the agent to wait, and that only after the agent "made the statement to him that the order meant only that he was to take said car if it was all right, he signed said order without reading it." Clearly, as we think, these allegations, and others of like import set out in the defendant's answer, are wholly insufficient. Of course, the general allegations of fraud are of no avail. In the case of *Stoddard Mfg. Co.* v. *Adams,* 122 *Ga.* 802 (50 S. E. 915), the court says: "It is settled by numerous decisions of this court that where one signs a contract without reading it, he is bound by its terms, unless he shows that he could not read, and was for this reason imposed upon, or that the contract was signed under some emergency which excused the failure to read, or that the failure to read was brought about by some fraud or misleading device of the other party." See *Wallon Guano Co.* v. *Copelan,* 112 *Ga.* 319 (37 S. E. 411, 52 L. R.

A. 268), and cit. We quote further from the *Adams* case, supra.: "The fact that the defendant was 'busy' did not create an emergency; nor will the fact that the other party expressly stated that the contract was as claimed by the party seeking to avoid it be a good defense to an action on the contract. Both of these points were involved in *Harrison* v. *Wilson Lumber Co.*, 119 *Ga.* 6 (2) [45 S. E. 730]. . . A party who can read must read, or show a legal excuse for not doing so." The doctrine laid down in that case was approved in *Widincamp* v. *Patterson*, 33 *Ga. App.* 483 (127 S. E. 158), and *Williamson* v. *Read Phosphate Co.*, 40 *Ga. App.* 219 (149 S. E. 175).

Doubtless enough has already been said to indicate that in our opinion no error was committed in sustaining the demurrer to the defendant's answer as amended, and in directing a verdict, and in rendering judgment in favor of the plaintiff as hereinbefore stated.

*Judgment affirmed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*