27978. MUTUAL BENEFIT HEALTH AND ACCIDENT ASSOCIATION *v.* MARSH.

DECIDED FEBRUARY 23, 1940. ADHERED TO ON REHEARING MARCH 29, 1940.

*Bussey & Fulcher,* for plaintiff in error.
*Paul T. Chance, Curry & Curry,* contra.

SUTTON, J. Fred L. Marsh brought suit against Mutual Benefit Health & Accident Association on an accident and health insurance policy, the application for which was attached to and made a part of the policy contract. The case proceeded to trial, and the jury returned a verdict in favor of the plaintiff. This court reversed the trial court's judgment overruling the defendant's motion for new trial, holding that under the evidence a finding was demanded as a matter of law that in the written application the insured made false and material representations and wilfully and fraudulently concealed facts material to the risk. For statement of the case and opinion see *Mutual Benefit Health & Accident Asso.* v. *Marsh,* 60 *Ga. App.* 431 (4 S. E. 2d, 84). Thereafter the plaintiff filed in the trial court an amendment, allowed by the court over the objections of the defendant, as follows:

"'That D. P. O'Connor is the agent in charge of the defendant's agency in the City of Augusta, Richmond County; that said agent, having solicited plaintiff a number of times for an application for insurance, finally called at plaintiff's home on October 30, 1937, and by persuasive overtures as to the merits of the insurance he sold procured plaintiff's consent to make application for a policy; that said agent thereupon sat down to a table in plaintiff's home, began to propound certain questions to plaintiff, and which were

in substance as follows: 'What disability or accident insurance do you carry?' To this question plaintiff answered 'None,' and which answer was true. Said agent then propounded, in substance, the following question: 'Have you ever made claim for or received indemnity on account of any injury or illness?' In answer to said question plaintiff began to reflect, recall, and inform said agent as to the injuries and illnesses for which he had received indemnity in years gone by; whereupon plaintiff was interrupted and stopped by defendant's said agent, who requested that plaintiff only inform him as to injuries and illnesses occurring within a period of five years prior thereto; that plaintiff, not having had any injury or illness within a period of five years prior thereto, so informed said agent, and no further answer or inquiry was made to said question; that said agent, in the manner aforesaid, prevented plaintiff from informing him of the fact that many years prior thereto, to wit, beginning in the year 1919 and ending in the year 1932, a period of thirteen years, plaintiff had sustained certain minor injuries and had been ill, all of which, however, were of a temporary nature and soon left plaintiff physically and mentally sound in every respect, the said injuries and illnesses being as follows: December, 1919, fever; April, 1920, injury to foot; February, 1921, bad cold; January, 1922, cold and fever; July, 1922, sprained finger; November, 1922, malaria; September, 1925, sprained ankle; December, 1925, tonsils removed; November, 1926, la grippe; January, 1928, infected sinus; June, 1928, fractured radius; July, 1931, sprained finger; December, 1932, minor injury to eye; that plaintiff is a railroad conductor, is subject to the hardships and hazards incident thereto, and had to pay to the defendant additional premiums as a result of such hazards; that said agent also propounded, in substance, the following questions to plaintiff: 'Have you received medical or surgical treatment or had any local or constitutional disease within the past five years?' To said question plaintiff answered 'None,' and which answer was true; that plaintiff, during said five-year period and for some nine years prior thereto, had had no injury or illness except possibly some trivial and slight indisposition, and had been in perfect health; that said agent, after filling out said application, and at the request of plaintiff, read the same over to plaintiff briefly and hastily; that said agent did not read to plaintiff the question and answer contained in said appli-

cation, to wit: 'Have you any application for life or disability insurance pending?' Answer, 'No;' that said agent did not read to plaintiff the answer he had written down to question No. 10 in said application, to wit: 'Accident, 1928, automobile, don't know, Mass. Mutual,' and plaintiff made no such answer to said question; that plaintiff took every reasonable precaution to see to it that said application was properly and truthfully made; that plaintiff had known said agent for a number of years, and trusted and relied upon him implicitly, and had no cause whatever to believe that he did not in fact prepare said application properly and as it was his duty to do; that plaintiff did in good faith believe, and by said agent's acts and conduct aforesaid was led to believe, that said application had been by said agent properly, fully, and truthfully filled out, and that no further information was desired or required, otherwise plaintiff would not have signed said application or accepted a policy from said defendant; that as to such matters plaintiff is entirely ignorant, while defendant and its agent has the information of experts; that the defendant accepted said application in its incomplete form as prepared by its agent, made no objection thereto and issued said policy thereon to plaintiff, and plaintiff alleges that the defendant or its agent has by said tricks, artifices, and device misled and deceived plaintiff in the manner herein set out, and the defendant is estopped and should not now be heard to assert that said application omits information material to the risk assumed or be heard to defend upon such ground; that as to all other questions in said application not herein specifically dealt with, plaintiff alleges that the answer given in each instance is true; that plaintiff has never at any time had a policy of insurance canceled out on him, except by his consent and refusal to pay the premium; that at the time of making application for insurance in the present case plaintiff did not have any accident or health insurance, and plaintiff now stands ready to show and prove that the defendant's testimony adduced by depositions upon the former trial of this case was false, and that such perjured testimony affected the outcome of this case upon the appeal entered by the defendant."

The exception is to the judgment overruling the defendant's general demurrer to the petition as amended.

The case on its former appearance before this court was decided

under the law and the evidence; and it was held as a matter of law, that, the application having been attached to and made a part of the policy, and the insured having made false answers material to the risk, the policy was void, and was void for the additional reason that the insured wilfully concealed facts material to the risk. Inasmuch as the case was remanded for another hearing, and the plaintiff filed an amendment, the case would ordinarily be tried de novo; and if it should appear that the evidence was different on the second trial, the decision of the appellate court would not be binding. However, questions of law determined on the appeal became the law of the case; and if, as contended by the plaintiff in error, the petition as amended shows allegations of facts which would conclude the plaintiff against recovery, the determination of the truth of such facts does not have to depend upon the introduction of evidence in that respect, and a general demurrer on the ground that the petition as amended does not set forth a cause of action will reach the defects and conclude the issue against the plaintiff. The following was established as the law of the case on its former appearance before this court: That in the present case representations, among others, that the applicant had no application for life or disability insurance pending, that he had not had a policy canceled on him, that he had not had tonsilitis or malaria, that he had never been operated on by a physician or surgeon, and that he had received no injury previously to the one for which recovery was sought, were material to the risk, and that the concealment of the fact that he had received indemnities between January, 1920, and December, 1932, was material to the risk. It was held that if the representations were false and the concealment wilful, the policy was void for each reason. It was held as a matter of law that under the evidence such representations and concealment were false. It was also held, that the fact that certain of the questions were not asked by the agent did not affect the rights of the parties where the insured was laboring under no disability, and could read and write, and did not sign the application by reason of some misleading artifice or device perpetrated by the agent, or was prevented from reading the application containing false answers before he signed it, or that the answers were inserted by alteration after the application was signed; and that where, as in the present case, the application is attached to

and made a part of the policy, the application is thus integrated therein and can not be separately impeached, but that it must stand or fall as a part of the policy; and that if it falls, so does the policy, because the insured is committed to the representations as set forth in the application. (Citing.) It was also held that a provision of forfeiture was contained in the policy, in that it recited that "strict compliance on the part of the insured and the beneficiary with all the provisions and agreements of this policy, and the application signed by the insured [and which was attached to the policy], is a condition precedent to recovery, and any failure in this respect shall forfeit to the association all right to any indemnity."

It is shown by the petition as amended, that in the application attached to and made a part of the policy, a copy of which was also attached to the plaintiff's pleadings, the policy was to be issued "solely and entirely upon the written answers to the questions" in the application; and that "the association is not bound by any statement made by, or to, any agent, unless written herein." Whether or not the fraudulent insertion of false answers in the application under the pleaded facts of the present case would constitute an estoppel against the company has been decided by the Supreme Court in *National Accident &c. Ins. Co.* v. *Davis,* 179 *Ga.* 595 (176 S. E. 387). In that case the following question was certified by this court: "Does the fraudulent insertion, by an agent of an insurance company, of false answers in an application for insurance without the knowledge of the applicant, where such application is attached to and made a part of the policy issued and delivered to the applicant, which application expressly limits the authority of the agent taking the application, constitute such notice to the company issuing the policy as amounts to notice and estoppel on their part; or is the applicant, by the receipt of and reliance on the policy, estopped from proving and pleading the fraud of the agent in taking the application and in making false answers; the limitation upon the authority of the agent of the insurance company as contained in the application being as follows: ' Question. Do you understand and agree . . that the company is not bound by any knowledge of or statements made by or to any agent unless written hereon? Answer: Yes.' " The question was answered in the second headnote as follows: "In answer to the sec-

ond question, it is held that under the facts stated the insurer would not be held to notice of the falsity of the answers fraudulently inserted in the application by its agent, and would not be estopped; while on the other hand the applicant, later the insured, would be estopped from pleading or proving the fraud of the agent, the application signed by the insured containing the statement ' that the company is not bound by any knowledge of or statements made by or to any agent unless written hereon.' " See also *Wilkins* v. *Natl. Life & Accident Insurance Co.,* 23 *Ga. App.* 191 (2-c) (97 S. E. 879); *National Accident &c. Ins. Co.* v. *Davis,* 50 *Ga. App.* 391 (178 S. E. 320).

In the application attached to the petition the following questions, among others, and the answers thereto appear: "8. Have you any application for life or disability insurance pending? [Answer] No." In the amendment the plaintiff seeks to explain and specifically deal with, among others, question No. 8, as to which he alleges that the question was not read to him; and thereafter he alleges that "as to all other questions in said application not herein specifically dealt with, plaintiff alleges that the answer given in each instance is true." A proper construction of the allegations, therefore, is that the answer to question No. 8 was false, although the plaintiff disavows responsibility for the answer. "9. Has any application ever made by you for life or disability insurance been declined, postponed or rated up, or has any life or disability insurance issued to you been canceled? [Answer] No." The amendment shows that the plaintiff had had a policy canceled on him, but alleges that it was by his consent and refusal to pay the premium. This is no justification for the false answer, because, as was ruled in the case on its merits on its former appearance here, "He should have answered truthfully in his application, and there explained his answers in any way he saw fit, in order that the insurance company might have determined for itself whether it would decline the insurance altogether or would accept it at a higher rate." "12. Have you ever had any of the following diseases: rheumatism . . tonsilitis . . malaria? Name diseases, dates, and length of disability. [Answer] None." The amendment shows that the insured had malaria in November, 1922. "14. Have you ever been operated on by a physician or surgeon? [Answer] No." The amendment shows that the insured had his tonsils removed in De-

cember, 1925. "19. Have you ever received an injury prior to the one here mentioned? [Answer] No." The amendment shows that the following injuries had been sustained: April, 1920, injury to foot; July, 1922, sprained finger; September, 1925, sprained ankle; June, 1928, fractured radius; July, 1931, sprained finger. All of the above answers have been held in the former decision to be material to the risk, and the fact of their falsity need not be left for determination by evidence on another trial, but, where conclusively appearing as above from the plaintiff's own pleadings, may be reached by demurrer. It is further shown that the following question was in the application: "10. Have you ever made claim for or received indemnity on account of any injury or illness? If so, what companies, dates, amounts and causes?" The answer reads as follows: "Accident, 1928. Automobile. Don't know. Mass. Mut." It is alleged that the applicant made no such answer, but it is admitted in the amendment that he had had numerous injuries and illnesses from December, 1919, to December, 1932, including cold and fever, January, 1932; sprained ankle, September, 1925; malaria, November, 1922; tonsils removed, December, 1925; la grippe, November, 1926; infected sinus, January, 1928; fractured radius, June, 1928.

Construing the petition most strongly against the pleader, as must be done on general demurrer, it further admits that the insured had received indemnities therefor, because it is stated therein that when the agent read such question to him he began to "reflect, recall, and inform said agent as to the injuries and illnesses *for which he had received indemnities* in years gone by." (Italics ours.) Inferentially, the applicant first intended to supply the information which the question, *made known to him,* sought to elicit, but it is averred that at the suggestion of the agent the answer was made with respect to a period of only five years theretofore, and because in such period he had had no injury or illness he failed to make known the indemnities he had actually received. This clearly manifests a conscious suppression of information which was sought by the company, even though he acted on the agent's suggestion, and which concealment, from the nature of the injuries specified, must be held as a matter of law material to the risk. Being able to read and write, as the contrary does not appear, he could readily have determined, when he signed the application, that

it called for information as to past indemnities. Its preparation was on his own responsibility, and was not the act of one whose insertion of false and material matter or wilful concealment of material facts would be binding upon the company under the contractual provisions agreed to. It thus appears from the petition as amended that no right of recovery is shown in the plaintiff, and the trial court erred in overruling the defendant's general demurrer.

The contention of the defendant in error that the demurrer was properly overruled because the amendment shows conduct on the part of the agent which, under the fourth headnote of *National Accident & Health Ins. Co.* v. *Davis,* supra, constitutes an estoppel against the insurance company, is without merit. It was held in that case: "If the application containing the false answers referred to was signed by the applicant by reason of some misleading artifice or device perpetrated by the agent, such as reasonably prevented the applicant from reading the application containing the false answers before he signed it, or if the answers were inserted by alteration after the application was signed, a different case might be presented." (Citing.) The argument of counsel for plaintiff in error that he does not seek to recover because of any statement made by the agent but relies on the "acts" of the agent urges "a distinction without a difference." It clearly appears from the petition as amended that the only act of the agent relied on by the plaintiff as a misleading artifice or device, and as effecting an estoppel against the company to disavow the act of the agent, consists of his conduct in impliedly representing to the applicant that it was necessary to list indemnities received only in the previous five years, and in reading only a part of the contents of the application and concealing the false matter inserted by him. This amounts to no more than saying that the agent made a misrepresentation as to the contents of the application, and is subject-matter to which applies the provision in the application attached to and made a part of the policy contract, "Do you hereby apply to the Mutual Benefit Health & Accident Association for a policy to be issued solely and entirely in reliance upon the written answers to the foregoing questions, and do you agree that the Association is not bound by any statement made by, or to, any agent unless written herein?" The obvious purpose of such a provision is to prevent a waiver or estoppel from arising against the company by

reason of any representation made by or to the agent and which is not therein noted, but it is nevertheless binding on the insured.

Nothing alleged shows an artifice or device which reasonably prevented the insured from reading the application. In *Lee* v. *Loveland,* 43 *Ga. App.* 5 (2) (157 S. E. 707), it was ruled: "The fact that the plaintiffs' salesman had remained in the defendant's store for several hours and waited to urge the execution of the papers 'until defendant became busily engaged with his customers, and then repeatedly read' a certain stipulation which, if standing alone, was favorable to the defendant, together with representations by such salesman that the other papers presented for execution were not promissory notes, but were 'mere agreements designed to bind defendant to remit' for the goods according to sales, constituted no valid excuse for the failure of the defendant to acquaint himself with the nature and contents of the papers before executing the same, it appearing from the allegations of the plea that although the defendant was suffering from imperfect sight, due to failing eyes, he was yet able to read under favorable light conditions, and was unable to do so in the particular transaction only because of the 'conditions prevailing in his place of business' at the time. So far as appears, the defendant could easily have protected himself from the alleged fraud of the plaintiff's salesman by providing a light and ceasing to deal with his own customers for a sufficient time at least to examine and read the six brief promissory notes which he executed, and upon which the instant suit is predicated. 'A party who can read must read, or show a legal excuse for not doing so. Fraud which would relieve a party who can read must be fraud which prevents him from reading." (Citing.) In *Hawkins* v. *Adams,* 44 *Ga. App.* 378, 381 (161 S. E. 639), it was said: "What are the facts alleged in the answer which, if taken as true, are sufficient to avoid the order or agreement by reason of fraud in its procurement? Defendant says he was busy, at work on his books; that he did not have time to read the order; that he wanted the agent to wait; and that only after the agent 'made the statement to him that the order meant only that he was to take said car if it was all right he signed said order without reading it.' Clearly, as we think, these allegations, and others of like import set out in the defendant's answer, are wholly insufficient. Of course the general allegations of fraud are of no avail. In the case of *Stoddard*

*Mfg. Co.* v. *Adams,* 122 *Ga.* 802 (50 S. E. 915), the court says: 'It is settled by numerous decisions of this court that where one signs a contract without reading it, he is bound by its terms, unless he shows that he could not read, and was for this reason imposed upon, or that the contract was signed under some emergency which excused the failure to read, or that the failure to read was brought about by some fraud or misleading device of the other party.' See *Walton Guano Co.* v. *Copelan,* 112 *Ga.* 319 (37 S. E. 411, 52 L. R. A. 268), and cit. We quote further from the *Adams* case, supra: "The fact that the defendant was "busy" did not create an emergency; nor will the fact that the other party expressly stated that the contract was as claimed by the party seeking to avoid it be a good defense to an action on the contract. Both of these points were involved in *Harrison* v. *Wilson Lumber Co.,* 119 *Ga.* 6 (2) [45 S. E. 730]. . . A party who can read must read, or show a legal excuse for not doing so.' The doctrine laid down in that case was approved in *Widincamp* v. *Patterson,* 33 *Ga. App.* 483 (127 S. E. 158), and *Williamson* v. *Read Phosphate Co.,* 40 *Ga. App.* 219 (149 S. E. 175)." These decisions are authority for holding, as we do, that the mere representation by the agent of the contents of the application by reading only a part of the written answers and failing to read the false matter to the applicant, between whom and the agent there existed no fiduciary relationship and who was able to read and write, will not, without more, authorize him to set up and prove as a defense to such false answers and concealments that it constituted an emergency excusing his failure to read the application, or a misleading artifice or device reasonably preventing him from reading it.

Other cases cited and relied on by the defendant in error do not require any ruling different from that we have made with respect to the alleged fraudulent artifice or device. *Brooks* v. *Matthews,* 78 *Ga.* 739 (3 S. E. 627), has in *Stoddard Mfg. Co.* v. *Adams,* 122 *Ga.* 802 (50 S. E. 915), been limited to its own peculiar facts. It has also been distinguished in *McCommons* v. *Greene County,* 53 *Ga. App.* 171 (184 S. E. 897). In that case the plaintiff testified, in reference to the execution of a deed, "that the attorney for the grantee came to see her early one morning and stated that he was in a hurry and wanted to get her to sign the deed, that he told her he would read the deed to her, that in the living-room of

her house where the windows or the shades were not up and the blinds were not open he read the deed to her, that she ascertained afterwards that he had failed to read the provision in the deed giving permission to get soil off the place and by which she released the grantee from any damage that might occur," that he had been her husband's attorney and she admired him and he was considerate, and he told her he was not working against her but was looking out for her interests, and that she did not know that she was releasing her right to claim damages for any purpose whatever, and that this provision was not read to her. In the opinion it was said: "It does not appear from the evidence or the allegations in the plea that the plaintiff, who presumably was able to read, was laboring under any disability, or that there was any emergency which would dispense with the necessity of the plaintiff's reading the contract. Nor was there any fiduciary or confidential relationship existing between the plaintiff and the attorney for the grantee in the deed which would justify the plaintiff in relying on the attorney's alleged representations as to the contents of the deed. The mere fact that the plaintiff signed the deed in a room where the shades were not up and the blinds were not open, where it does not appear that she could not have raised the shades or opened the blinds and let in sufficient light by which she could read the deed, is insufficient as an excuse for her not reading the deed and becoming acquainted with its contents before she signed it. . . From an inspection of the following cases relied on by the plaintiff in error it will be found that they are clearly distinguishable. *Brooks* v. *Matthews*, 78 *Ga.* 739 (3 S. E. 627) ; . . The ruling in *Brooks* v. *Matthews, supra, is seemingly disapproved by the Supreme Court* in *Stoddard* v. *Adams, supra,* where the Supreme Court states that it will not be extended beyond its peculiar facts." (Italics ours.)

In *Clubb* v. *American Accident Co.,* 97 *Ga.* 502 (25 S. E. 333), the ruling was predicated on the fact of the agent being "the full and complete representative of the company;" and furthermore it was contended by the plaintiff that the questions and answers were written in the application after he signed it. This case was distinguished from one like the present, in *National Accident &c. Ins. Co.* v. *Davis, supra,* as is also the case on which it was based, Insurance Co. *v.* Wilkinson, 80 U. S. 222 (20 L. ed. 617), where, it

was said that "there was no limitation upon the agent's authority in an antecedent application, and where the agent was thus acting within the apparent scope of his authority, in the preliminary negotiations." See also the same case, 50 *Ga. App.* 391, 394 (178 S. E. 320). In *Bankers Health & Life Ins. Co.* v. *Kimberly,* 60 *Ga. App.* 128 (3 S. E. 2d, 148), the policy provided that "All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties." In fact the application was not attached to the policy. Hence it was possible for the plaintiff to show that the conduct of the insured, with respect to the false answers, was not fraudulent. Representations, though false and material, will not of themselves avoid a policy of insurance where the conduct of the insured may be found by the jury not to have been fraudulent, unless the application is attached to and made a part of the policy contract and the policy is free from such a provision as was contained in the policy in the *Kimberly* case; whereas under the conditions of the application and the policy in the present instance, representations if false and material will void the policy, even though it could be said that the insured had acted in good faith.

It is further contended by the defendant in error that a proper construction of the provision in the application, "Do you agree that the insurance hereby applied for shall not be binding upon the association until a policy is issued and accepted by you while in good health and free from injury?" is that the policy would be binding upon the company "if and when a policy was issued, accepted, and paid for by the insured and at a time when he was in good health." This contention is clearly without merit, and is disposed of in the statement of the court, on the motion for rehearing when the case was formerly before this court, wherein it was pointed out that the existence of certain facts, if known, might cause an insurance company to refuse to enter into a contract, even assuming that the applicant was in good health at the time. Such a provision in an application attached to and made a part of the policy contract does not render the policy incontestible under the circumstances named, but the insurer may avoid liability when it is shown that the insured made false and material representations or wilfully concealed facts material to the risk.

The foregoing opinion and the headnote have been written and

substituted for the original opinion and headnotes after the grant of a rehearing on motion by the defendant in error. The original judgment of reversal is adhered to.

*Judgment reversed. Felton, J., concurs. Stephens, P. J., concurs in the judgment.*