24698.   MASHBURN DRUG CO. *v.* VALDOSTA DRUG CO.

DECIDED MARCH 24, 1936.

*A. J. Little, Franklin, Langdale & Eberhardt,* for plaintiff.

*Wilcox, Connell & Wilcox, Copeland & Dukes,* for defendant.

STEPHENS, J. On November 1, 1932, Mashburn Drug Company filed suit against Valdosta Drug Company on a note for $8000 dated April 1, and due October 1, 1932. The petition alleged that both companies were Georgia corporations; that the note was endorsed by three persons who were made defendants with the Valdosta Drug Company; that notice of the intention to claim attorney's fees had been given; that the defendants had refused to pay the note or any part of it on demand; and copies of note and notice were attached to the petition. The defendants answered admitting all the allegations, except that of indebtedness to the plaintiff on the note or for attorney's fees; and denying that they owed the alleged indebtedness or any part thereof. Further answering as "an affirmative defense" they narrated a long series of facts, of which the material portion may be abbreviated as follows: On September 23, 1929, and prior thereto, Valdosta Drug Company and Mashburn Drug Company were both engaged in the wholesale-drug business in the City of Valdosta and transacted business in South Georgia and North Florida and particularly within a radius of 110 miles from Valdosta. On the date stated a contract was

made between them whereby the Valdosta Drug Company purchased the stock in trade and fixtures then owned by the Mashburn Drug Company and paid therefor the sum of $75,000, of which $25,000 was paid in cash and the balance in installments. In connection with this sale the Valdosta Drug Company also purchased, for an additional consideration of $12,500, the good-will of the Mashburn Drug Company, as to which as set out in the contract in paragraph 9: "It is further agreed between the parties that the good-will of the party of the first part is a valuable asset and that the party of the first part agrees to sell to the party of the second part, and the party of the second part agrees to purchase from the party of the first part, the good-will of the party of the first part at and for the sum of $12,500," the payment of which was to be evidenced by a promissory note dated contemporaneously with the payment of the $25,000 and delivery of the stock of goods, due October 1, 1930, and payable to the order of the party of the first part (Mashburn Drug Company) with interest at six per cent.; it was further agreed that this note should be renewed for twelve months on payment of accrued interest and $2500 on the principal, the renewal to be evidenced by a promissory note for $10,000 due October 1, 1931, payable to the order of the party of the first part and bearing interest at six per cent. Paragraph 10 of the contract provided: "In consideration of said sum of $12,500 referred to in the next preceding paragraph of this contract, the party of the first part agrees not to engage for a period of five years from October 1, 1929, directly or indirectly, in the wholesale drug or druggists'-sundries business in the City of Valdosta, Georgia, or within a radius of 110 miles therefrom, the City of Jacksonville, Florida, excepted, and not to permit during such time certain of its officers, to wit: F. W. Webb and M. W. Fry to engage in such business within said territory." On the same date when the contract between Mashburn Drug Company and Valdosta Drug Company was entered into, a separate contract was entered into between Valdosta Drug Company and F. W. Webb and M. W. Fry, who were officers of Mashburn Drug Company, in which said Fry and Webb, in consideration of the benefits received by them from the contract of sale between Mashburn Drug Company and Valdosta Drug Company, and in consideration of $10 to them in hand paid, agreed "not to engage, for a period of five years from October 1, 1929,

either directly or indirectly, as owners, employer, employee, principal or agent, in the wholesale drug or druggists'-sundries business in the City of Valdosta, Georgia, or within a radius of 110 miles therefrom, the City of Jacksonville, Florida, excepted, except and unless they or any one of them should be permitted to so engage in such wholesale drug or druggists'-sundries business within said territory by written consent of the party of the first part (Valdosta Drug Company) endorsed upon this contract or any duplicate thereof." Pursuant to the contract between Mashburn Drug Company and Valdosta Drug Company, the latter executed and delivered to the former its note for $12,500. At the maturity of this note the Valdosta Drug Company paid $2500 and the accrued interest and gave another note for $10,000 due October 1, 1931, on which date the accrued interest and $2000 of the principal was paid, and another note was given for $8000 due April 1, 1932, on which date the accrued interest was paid, and a new note was given for $8000 due October 1, 1932, which is the note sued on, and represents part of the purchase-price of the good-will of Mashburn Drug Company which it sold to Valdosta Drug Company under the agreement of September 23, 1929.

After the delivery of said contract and of the contract between Valdosta Drug Company and F. W. Webb and M. W. Fry, "the defendants herein never at any time up to the date of the breach of said agreement on the part of the Mashburn Drug Company and F. W. Webb, as will hereinafter be set out" failed to pay any of the notes described in the contract, within ninety days from maturity, except the note for $12,500 and the decreasing balances thereon which were renewed from time to time, and defendants otherwise complied fully with all the terms in the contract by them to be performed. However, the plaintiff and its president F. W. Webb breached that part of the contract between Mashburn Drug Company and Valdosta Drug Company in which the former agreed not to engage for a period of five years from October 1, 1929, directly or indirectly, in the wholesale drug or druggists'-sundries business in the City of Valdosta or within a radius of 110 miles therefrom, the City of Jacksonville, Florida, excepted, and not to permit, during such time, certain of its officers, to wit: F. W. Webb and M. W. Fry, to engage in such business within said territory, "for that the said Mashburn Drug Company did, on or about

the 1st day of January, 1932, the exact time being to defendants unknown, permit F. W. Webb, its president, to acquire a stock interest in and to become elected president of Southern Drug Company, a corporation with its principal office at Jacksonville, Florida, and then and there to assume the complete management of the business of said corporation, which was then and there engaged in the wholesale drug and druggists'-sundries business within a radius of 110 miles from Valdosta, Georgia, as will be hereinafter particularly set out." At the time Valdosta Drug Company purchased the stock of merchandise and good-will of Mashburn Drug Company, the Southern Drug Company did not send a traveling salesman in any part of the territory within a radius of 110 miles from Valdosta, the City of Jacksonville, Florida, excepted, and including 24 named towns all in the State of Florida. Prior to the sale by Mashburn Drug Company to Valdosta Drug Company, both of these companies sent traveling salesmen periodically to all the towns within the described territory for the purpose of soliciting orders for merchandise handled by them. Up to the time "said contract was breached by the Mashburn Drug Company, as aforesaid," defendant sent its salesmen to the towns aforesaid to solicit orders for merchandise, and up to said time the Southern Drug Company, did not send its salesmen or solicit business in said cities. Prior to October 1, 1929, E. Y. Johnson had been employed by Mashburn Drug Company as a traveling salesman to work the territory aforesaid, and after that date Johnson was employed by Valdosta Drug Company in the same territory and became a valuable employee. On or about August 1, 1932, F. W. Webb, then president of Southern Drug Company, and acting in its behalf, employed Johnson and directed him to solicit orders in behalf of Southern Drug Company throughout all the territory in North Florida. Webb also on or about January 15, 1932, sent out a circular letter to the trade in North Florida, advising the former customers of Mashburn Drug Company of his connection with Southern Drug Company and solicited business from the trade in said territory for and in behalf of Southern Drug Company. The defendants did not know until after April 1, 1932, that said F. W. Webb was endeavoring to reestablish his connection and trade in said territory. After the employment of Johnson by Southern Drug Company, Valdosta Drug Company undertook to retain its business in said territory,

but Johnson retained a major portion of the business. On the date said contracts were executed F. W. Webb was and is now president of Mashburn Drug Company and is its principal stockholder, and if the note sued on is collected, will be the principal beneficiary from the proceeds thereof. Not only has Mashburn Drug Company breached its contract with respect to the purchase and sale of its good-will to Valdosta Drug Company, but the said F. W. Webb likewise has breached his individual contract, for that he has engaged in the wholesale drug and druggists'-sundries business within a radius of 110 miles from Valdosta, in and through the Southern Drug Company, the corporation of which he is president and general manager. The defendants have not consented for said Webb to engage in business in said territory, either directly or in his own behalf, or indirectly through the corporation of which he is president and manager as aforesaid. The plaintiff demurred to this answer on numerous grounds. The demurrer was overruled and the plaintiff excepted.

After the close of the evidence the court directed a verdict for the defendant. The plaintiff moved for a new trial on the general grounds, on the ground of the exclusion of certain testimony hereinafter described, and on the ground that it was error to direct a verdict. This motion was overruled, and the plaintiff excepted.

■ The special grounds on which the plaintiff demurred to the answer relate chiefly to allegations about the contract made by the defendant with Webb and Fry. The objection was that this contract was irrelevant, the plaintiff not being a party thereto. This objection is well taken. The defendant, instead of including the agreements of Webb and Fry in the contract made with the plaintiff, elected to take separate contracts. No reason appears in this case why the defendant should be allowed to merge the two contracts into one. The court erred in overruling paragraphs 3, 4, 5, 6, 8, 9, 11 and 12 of the demurrer to the answer. In paragraph 7 of the demurrer to the answer it was claimed that the allegation that Webb, on the date of the execution of the contracts, was and is now president of Mashburn Drug Company, was irrelevant. This point was not well taken. The allegation that Webb was the principal stockholder of Mashburn Drug Company and therefore would be the principal beneficiary of a recovery on the note was irrelevant. He was not a party to the case. As he was a witness, his interest

could be proved and be considered by the jury. But his interest in the case was not a matter which could be pleaded. In paragraph 10 of the demurrer to the answer the plaintiff demurred to the defendant's allegations to the effect that the breach of the sale contract by the plaintiff destroyed any right of recovery on the note. These allegations were merely legal contentions which could not bind the court or the plaintiff, and it was not error to overrule this ground of demurrer. The general demurrer to the answer was properly overruled. The assignment of error on this ruling is covered by what will be said with regard to the ruling in directing a verdict for the defendant.

■ The answer set up that the note sued on was given for a balance of the purchase price of the good-will of a wholesale drug business, and in the sale contract the seller agreed "not to engage for a period of five years from October 1, 1929, directly or indirectly, in the wholesale drug or druggists'-sundries business in the City of Valdosta, Georgia, or within a radius of 110 miles therefrom, the City of Jacksonville, Florida, excepted, and not to permit during such time certain of its officers, to wit: F. W. Webb and M. W. Fry, to engage in such business within said territory." It was further alleged that on or about January 1, 1932, Webb, who was still the president of the Mashburn Drug Company bought stock in the Southern Drug Company which was located in Jacksonville, became its president and entered into active competition with defendant in certain towns in Florida which were within a radius of 110 miles from Valdosta. It was alleged that Mashburn Drug Company permitted its president Webb, to do these acts, and thereby breached its contract with the defendant. On these facts the defendant contended that the covenants in the contract of sale were mutual and dependent, that the contract was entire, and not severable, and a strict observance of its covenants by the plaintiff and Webb was a condition precedent to the right of the plaintiff to recover on the note. This contention is not sustainable. The suit was brought on a plain promissory note, not on the sale contract. In this note there were no stipulations to be performed by the payee. In this respect the cases cited for the defendant differ from the present one. This case is within the principle ruled in *Daniel* v. *Trice*, 31 *Ga.* 162; *Finney* v. *Cadwallader*, 55 *Ga.* 75 and *International Harvester Co.* v. *Adams*, 135 *Ga.* 104 (6) (68 S. E.

1093). If the note and the sale contract are to be treated as together forming one and the same contract, the defensive matter set up by the defendant should be presented in a plea of recoupment. Code 1933, §§ 20-1311, 20-1314. In *Finney* v. *Cadwallader*, supra, opinion by Judge Bleckley, it was said: "Recoupment looks through the whole contract, treating it as an entirety, and regarding the things done and stipulated to be done on each side as the consideration of the things done and stipulated to be done on the other; and when a plaintiff seeks redress for the breach of the stipulation in his favor, it sums up the grievances on each side, strikes a balance and gives him a judgment for only such difference as may be found in his favor." Again, if the note and the sale contract be viewed as independent contracts, a plea of set-off could be filed. Code of 1933, §§ 20-1301, 20-1312. But here we have the particular case of a suit on an unconditional note defended by a claim of a breach of a sale contract from which flowed the consideration of the note. For the breach of such a contract the measure of damages would be as laid down in *Shaw* v. *Jones*, 133 *Ga.* 446 (8) (66 S. E. 240). In that case it was held that "Upon the breach of a contract of sale of the good-will of a business, the measure of damages is the loss suffered by the purchaser by reason of the wrongful acts of the seller constituting the breach, and in estimating such damages all the facts and circumstances tending to show the extent thereof may be considered by the jury."

Section 96-306 of the Code of 1933, says: "A breach of warranty, express or implied, shall not annul the sale if executed, but shall give the purchaser a right to damages. It may be pleaded in abatement of the purchase money." In this case there is an executed sale and an agreement in the nature of a warranty not to engage in the business nor to permit its officers to engage in the business, in the designated territory. See *Pound* v. *Williams*, 119 *Ga.* 904 (47 S. E. 218). No reason has been presented why this section of the Code does not apply to a case where there are two contracts as well as where all the agreements between the parties are embraced in one contract. Therefore the right of the defendant was not to have the note canceled without any proof of damage, but to have the note abated by the amount of damage from the plaintiff's breach of covenant. It was therefore error for the court to direct a verdict for the defendant, there being no allegation, and no evidence as to the defendant's damages.

The answer was not technically a plea of failure of consideration or of recoupment, because it did not allege any amount of damages, but only claimed that nothing was due on the note because of the plaintiff's breach of contract. This could easily be amended so as to make a good plea of total failure of consideration. Under such a plea, a partial failure could be proved and allowed. *Grier* v. *Enterprise Stone Co.*, 126 *Ga.* 17 (54 S. E. 806) ; *Pidcock* v. *Crouch*, 7 *Ga. App.* 299 (66 S. E. 971) ; *Crouch* v. *Spooner*, 9 *Ga. App.* 695 (2) (72 S. E. 61).

■ Another question which arose on the general demurrer to the answer as well as on the direction of the verdict was whether the Mashburn Drug Company could be held liable for the conduct of Webb in acquiring an interest in a wholesale-drug corporation in Florida, and as president thereof, making active efforts to get business in a number of Florida towns which were within a radius of 110 miles from Valdosta. The plaintiff contracted "not to permit" its officers Webb and Fry to engage in the drug business in the forbidden territory. In view of the object contemplated in the contract in this case, the agreement "not to permit" is to be construed as an undertaking or guaranty on the part of Mashburn Drug Company that its officers would not compete with the Valdosta Drug Company in the designated territory.

■ In the 7th to 11th grounds (inclusive) of the motion for new trial it is alleged that the court erred in refusing to allow certain witnesses who were experienced in the wholesale-drug trade to answer questions as to the meaning of the expression in the contract "City of Jacksonville excepted." Counsel stated to the court what they expected to prove by these witnesses. In brief, it was that according to the general custom and usage of the wholesale-drug business the phrase "City of Jacksonville excepted" had a technical meaning which imported that Jacksonville and its wholesale-drug territory would be excepted. The 12th and 13th grounds of the motion complain that the court excluded testimony along the same line. The plaintiff also offered two amendments which contained the same contention as to the meaning of the words "City of Jacksonville excepted." These amendments were disallowed by the court. It was not error to exclude this testimony or to disallow the amendments. The contract means that Mashburn Drug Company and its named officers would not engage in the business any-

where within the 110-mile radius from Valdosta, excepting the City of Jacksonville. This exception would not give them a right to operate in any locality which was in the drug territory of Jacksonville if it was also within the 110-mile radius from Valdosta.

Further in regard to the disallowed amendments as they were in the nature of replications to the answer, their allowance was "within the discretion of the court." See Code of 1933, §§ 81-311, 81-115, and 37-908. This was not a case for a quantum valebat to be filed by the plaintiff.

*Judgment reversed.* *Jenkins, P. J., and Sutton, J., concur.*