27516. BANKERS HEALTH AND LIFE INSURANCE COMPANY *v.* KIMBERLY.

DECIDED MAY 24, 1939.

*Boykin & Boykin,* for plaintiff in error.

*A. B. Taylor, J. L. Smith,* contra.

SUTTON, J. 1. The defendant demurred to the petition. On June 25, 1937, the court passed the following order: "It is ordered that the within demurrer be and the same is hereby sustained and said suit dismissed, unless plaintiff amends said petition within twenty days to meet the demurrer." An amendment, which met the demurrer, was presented to and allowed by the court on July 1, 1937; and the amendment was left with the judge, at his request, together with the other pleadings, to be returned to and filed with the clerk of said court, but this was not done until August 12, 1937. The defendant made a motion to strike the amendment on the ground that it was not filed in time; that is, within twenty days from the date of the order on the demurrer, June 25, 1937. Upon a hearing the judge denied this motion, reciting in his order that the amendment was presented to and allowed by him on July 1, 1937, and that the amendment was left with the court at the court's request, together with other pleadings, to be returned to and filed with the clerk of said court, and that the court inadvertently failed to return the pleadings and amendment to the clerk until August 12, 1937, and for reasons satisfactory to the court the motion to strike was denied, and the order passed on June 25, 1937, allowing the plaintiff twenty days within which to amend, was so modified as to allow the plaintiff sixty days from the date of said order on the demurrer within which to file the amendment therein referred to. The order on the demurrer and the order denying the motion to strike were all passed during the June term, 1937, of the city court of Carrollton. Under the facts and circumstances above stated we are of the opinion, and so hold, that the court did not err in denying the motion to strike the amendment. The order on the demurrer required that the petition be

amended within twenty days, but did not require that the amendment be filed within that time. It was presented to and allowed by the court within the twenty days, and was left with the judge at his request, he agreeing to file it with the clerk, and it was through inadvertence on his part that it was not filed within the twenty days. The failure to file it within the twenty days was not chargeable to the plaintiff. The order allowing an amendment engrafts it upon and makes it a part of the petition; and when it is filed within a reasonable time, depending on the further progress of the case, this should be sufficient, in the absence of an order requiring it to be filed within a certain time. There is no statute to the effect that an amendment must be filed before it may be considered as a part of the original pleadings. Furthermore, the court, in the order denying the motion to dismiss, modified the previous order of June 25, 1937, by providing that the plaintiff have sixty days from the date of said order within which to file the amendment referred to therein. As above stated, all of the orders above referred to were passed during the same term of court. "The authorities all hold that a court has plenary control of its judgments, orders, and decrees during the term at which they are rendered, and may amend, correct, modify, or supplement them, for cause appearing, or may, to promote justice, revise, supersede, revoke, or vacate them, as may in its discretion seem necessary." 1 Black on Judgments, § 153. See also Code, § 24-104 (6); *Jolly* v. *McAdams*, 135 *Ga.* 833 (70 S. E. 254); *Strahan* v. *Wolfe*, 2 *Ga. App.* 254 (58 S. E. 492); *News Publishing Co.* v. *Lowe*, 8 *Ga. App.* 333 (69 S. E. 128); *Hardwick* v. *Shahan*, 30 *Ga. App.* 526 (4) (118 S. E. 575).

2. This was a suit by the beneficiary, Lawrence Kimberly, against the Bankers Health and Life Insurance Company, upon a policy of insurance for $210 on the life of his wife. The plaintiff obtained a verdict for the amount sued for, and the defendant's motion for new trial was overruled. The insurance company denied liability, and set up that the policy was procured by fraud in that the insured made false answers to certain questions in the application for insurance, which were material to and affected the risk and rendered the policy of insurance void. Mrs. Lillie Kimberly was the insured, and it was contended by the insurance company that her answers to the following questions were untrue and were

fraudulently made for the purpose of obtaining the insurance: "Question No. 19: Are you in good health? Answer: Yes. Question No. 20: What medical or surgical attention have you had in the last five years? Month. Date. Year. Doctor. Diagnosis. Duration. Answer: None. Question No. 21: If female, are you now pregnant? Answer: No." The policy sued on provided: "All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties. If this policy shall have been obtained by fraud, the liability of the company under this policy shall be limited to the amount of premiums paid hereon." A material representation is one that would influence a prudent insurer in determining whether or not to accept the risk or in fixing the amount of the premium in the event of such acceptance. The materiality of a concealment or representation of fact depends not on the ultimate influence of the fact upon the risk, or its relation to the cause of the loss, but on the immediate influence upon the party to whom the communication is made in forming his judgment at the time of entering into the contract. *Mutual Benefit Health &c. Asso.* v. *Bell*, 49 *Ga. App.* 640, 646 (176 S. E. 124). Whether misrepresentations are material is ordinarily a question for the jury, and it will not be so held as a matter of law, except where their materiality is indisputably established by the evidence. This principle has been repeatedly ruled by this court. The application for this insurance was made on May 20, 1936, the policy was issued on June 1, 1936, and the insured died on September 2, 1936. The testimony was in conflict with respect to the truthfulness of the answers of the insured to the questions above stated, and whether they were fraudulently made to procure the insurance. For the purpose of the decision of this case it will be necessary to refer only to a portion of the evidence.

The plaintiff, who was the husband of the insured, testified: "The condition of my wife's health at the time she took out this policy, as far as I know, she was in good health. She had not been a sickly woman. She had always been a healthy woman. I didn't know what caused her death. She was taken sick, I can not express just what day, but it was right around a week before she died. She died the 2d of September, 1936." He further testified that his wife gave birth to a premature child in 1934;

that she was attended at that time by Dr. Hogue; that she was not treated after that; that this was some two years before the application for insurance was made; that she was pregnant on May 20, 1936 (the date the application for insurance was made), and had been for seven months; that anybody could see that she was pregnant at that time by looking at her; that she gave birth to the child on the 29th of July, 1936; that Mr. Grogan and Mr. Pope, agents for the insurance company, came to their home, and Grogan wrote up the policy (application) there on the porch; that the witness's brother-in-law, R. C. McCord, was also present; that the witness heard what was said, and Grogan did not mention at any time about the witness's wife being pregnant; that there was no question whatever about that at all; that Grogan told her that "the policy required him asking had she had a doctor inside of five years. Then he said that she looked healthy, and he didn't think it was necessary. Then he just asked her had she had a doctor inside of twelve months, which she had not." She could just read and write a little; she could read and write her name; the agent made a cross-mark at the bottom of the application to show her where to sign.

R. C. McCord, brother of the insured, testified that he went with Grogan and Pope to the home of his sister when the application for insurance in question was made; that he told them on the way over there that his sister, Mrs. Lillie Kimberly, was in a "family way;" that there was a conversation between Grogan, Pope, and Mrs. Kimberly when the application for the insurance was prepared by Grogan; that "as to what was said there, if anything, about former sickness or anything or doctors—here is the only thing I heard him say: He asked my sister had she had any chronic disease in the last year or two. She said 'No, except the baby.' That's all I heard said about it. I heard all the conversation between them." Just from observation the witness could tell by looking at Mrs. Kimberly that she was pregnant at the time the application was written.

Dr. W. L. Hogue testified to the effect that he had known Mrs. Kimberly for a good many years, and was her family physician; that he attended her in 1934 when she gave birth to a premature child, and at that time she did not have any trouble at all; that he was next called to see her about the middle of July, 1936, some two weeks before she gave birth to the child; that he made an

analysis and found that she had albumen in her urine; that he attended her when she gave birth to the child on July 29, 1936; that she died about a month after the child was born; that her death was caused by acute myocarditis and acute nephritis; that he made out the death certificate and stated therein that her death was caused by chronic myocarditis and chronic nephritis, but this statement was signed by him hurriedly, and was not a correct statement of the cause of her death; and that her trouble was acute instead of chronic as just stated.

R. D. Grogan testified for the insurance company, to the effect that he was one of the assistant superintendents for the company; that he went to the home of Mrs. Kimberly to write the insurance; that she was sitting on the porch; that he had known her for some eighteen months; that he wrote the answers to the questions in the application, and put them down as she answered them; that to question No. 19, "Are you in good health?" she answered "Yes;" that to question No. 20, "What medical or surgical attention have you had in the last five years?" she answered "None;" that to question No. 21, "If female, are you now pregnant?" she answered that she was not; that she was a large woman, was sitting down, and he did not notice anything to indicate that her answer to the question as to pregnancy was untrue; that R. C. McCord went with him to Mrs. Kimberly's when he wrote her application for insurance, but did not tell him anything about her being pregnant; that she seemed to write a good hand; that he handed the application to her and saw her sign; and that he put a cross-mark on the application to show her where to sign.

(a) A statement in an application for an insurance policy, that the applicant is in good or sound health at that time, is not to be construed to be a warranty upon the part of the applicant that his health is absolutely perfect. "Good health," as used in a policy of life insurance, means that the applicant or insured has no grave impairment or serious disease and is free from any ailment that seriously affects the general soundness and healthfulness of his system. *Atlantic & Birmingham R. Co.* v. *Douglas,* 119 *Ga.* 658 (46 S. E. 867), and cit.; *National Life & Accident Ins. Co.* v. *Falks,* 57 *Ga. App.* 384, 387 (195 S. E. 463), and cit. Under the evidence the jury was authorized to find that the insured was in good health at the time the application for insurance was made.

(*b*)  In answering a question in an application for insurance, "What medical or surgical attention have you had in the last five years?" the applicant did not falsely misrepresent a material fact so as to void the policy, as a matter of law, where it appears from the evidence that the insurance agent in filling out the application told the applicant that the policy or application stated or had in it five years, but that he would not require that, as she looked like she was healthy, and then asked her whether she had had medical or surgical attention within the last twelve months, where the answer to such question was "No," and where it appeared from the evidence that she had been attended by a physician two years prior thereto, when she gave birth to a premature child, from which she immediately recovered without any ill effects, but where she had not had medical or surgical attention within the last twelve months, which, according to the plaintiff's evidence, was the question propounded to her by the agent of the insurance company. *Federal Life Insurance Co.* v. *Summergill,* 45 *Ga. App.* 829 (166 S. E. 54) ; *New York Life Insurance Co.* v. *Watson,* 48 *Ga. App.* 211 (172 S. E. 602).

(*c*)  "Where soliciting and forwarding applications for policies of insurance was within the scope of the duties of an agent of an insurance company, and such agent undertook to prepare for another an application for insurance and wilfully inserted therein a false answer to a material question, he will be regarded in so doing as the agent of the company and not of the applicant, and the agent's knowledge of the falsity of the answer will be imputed to the company. . . Although, in such case, the application was, by its terms, a part of the contract of insurance, and was signed by the person to whom the policy was subsequently issued, if the latter was fraudulently misled and deceived by the agent as to the contents of the application in the respects indicated, and was in fact ignorant that it contained the false answer in question, the company will not be allowed to avoid the policy on the ground of a false warranty in relation to that answer." *Clubb* v. *American Accident Co.,* 97 *Ga.* 502 (25 S. E. 333). See also *German American Life Asso.* v. *Farley,* 102 *Ga.* 720, 735 (29 S. E. 615) ; *Travelers Protective Asso.* v. *Belote,* 21 *Ga. App.* 610 (94 S. E. 834) ; *Wilkins* v. *National Life & Accident Ins. Co.,* 23 *Ga. App.* 191 (2-*b*) (97 S. E. 879). Under the evidence in the present case

with respect to question 21 and the answer thereto, the jury was authorized to find that the brother of the insured told the insurance agent, at the time the application for the insurance was made, that the insured was pregnant at that time, and it further appeared from the evidence that she was seven months with child and that her pregnancy could easily be observed by looking at her; and that the agent of the insurance company was well acquainted with the insured, and saw and observed her when he filled out the application for the insurance policy sued on. The jury was further authorized to find that this question was not asked the applicant by the agent of the insurance company, and that this agent either fraudulently inserted the answer "No" to said question in the application at that time or inserted it therein after the applicant signed the application and without her knowledge. In either event the insurance company would not be allowed to avoid the policy.

The cases cited and relied on by counsel for plaintiff in error are distinguishable on their facts from the case at bar. In those cases the uncontradicted facts showed material and fraudulent misrepresentations or material and fraudulent concealments in the answers to the questions in the applications for insurance, which as a matter of law demanded findings in favor of the insurer. For instance, in *National Life &c. Ins. Co.* v. *Strother*, 53 *Ga. App.* 241 (185 S. E. 373), the applicant represented that he was in good health, that his doctor was Dr. M. K. Jenkins, and that he had never had any illness except children's diseases in infancy. The uncontradicted facts showed that the application for insurance was made on August 7, 1934; that the policy was issued on August 13, 1934; that the insured died September 11, 1934; that Dr. C. A. Rhodes attended and treated him continuously from June 25, 1934, until in July 1934; that he was seriously ill during that time with a temperature of 104 degrees; that he had coleo cystitis and infected gall bladder, and this doctor recommended that he have an operation for this trouble; that he was treated by Dr. Olin D. Cofer on August 1, 2, 3, and 4, 1934, who advised an immediate operation for the gall bladder trouble and chronic appendicitis, and this doctor put him under treatment, getting ready for an operation on August 7, 1934; that on August 6, 1934, he telephoned to this doctor that he wanted to see his mother before he went to the hospital, and the doctor heard nothing more from him until he

was called to see him on September 6, 1934, at which time he found him in a very serious condition, writhing in pain and agony; and that it was necessary for the doctor to perform at a hospital an emergency operation for appendicitis of a grave nature, it being found that the appendix had ruptured, causing a general poisoning of the abdominal cavity, and the insured died on September 11, 1934, of general peritonitis. Under the facts of the present case it was a question for the jury to determine whether the answers of the insured in the application for insurance were untrue, material, and fraudulently made for the purpose of obtaining the insurance, or whether there was a false, material, and fraudulent concealment on her part in making said application for insurance. Under the law and the evidence the jury was authorized to find in favor of the plaintiff; and no error of law appearing, the judgment overruling the defendant's motion for new trial will not be disturbed.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.*