### 28598. GLISSON *v.* BANKERS HEALTH AND LIFE INSURANCE COMPANY.

DECIDED JANUARY 24, 1941.

*Paul T. Chance,* for plaintiff.

*Cumming, Harper & Nixon, Turpin & Lane,* for defendant.

GARDNER, J. The body of the bill of exceptions is as follows: "Be it remembered in the case of Mrs. Mildred Jarrett Glisson against the Bankers Health Life Insurance Company, the same being an action on an insurance policy brought to the February term, 1939, of the city court of Richmond County. Thereafter,

at the April term, 1939, said case came on for trial, and a verdict and judgment was obtained in favor of the plaintiff in error, to wit; on April 27th, 1939. Thereupon the defendant filed a motion for new trial and which as amended came on to be heard on June 23, 1939, and with a brief of the evidence in said case duly certified, the court thereupon overruled said motion for a new trial. To said judgment of the court a bill of exceptions was sued out to the Court of Appeals, and thereafter on January 17, 1940, said judgment overruling said motion was reversed by the Court of Appeals, and a new trial granted in said case. That upon the return of the remittitur to the lower court the same was made the judgment of that court, and thereupon the plaintiff in error, to wit, on February 16, 1940, filed an amendment to her petition which amendment was allowed by the court on said date. Thereafter on February 28, 1940, the defendant Bankers Health Life Insurance Company specially demurred to and moved to strike the said amendment filed by the plaintiff in error, and which demurrer to said amendment came on to be heard on June 14, 1940, whereupon the court after argument sustained said demurrer of the defendant and struck the plaintiff's amendment. To the action of the court in passing said order sustaining said demurrer striking plaintiff's amendment, she did then and there except, now excepts and assigns error thereon upon the ground that said ruling is contrary to law. Thereafter, upon the call of the within case for trial at the regular June term, 1940, of the city court of Richmond County, the plaintiff in error announced ready for trial and offered to introduce evidence in support of her amendment filed February 16, 1940. The court having sustained defendant's demurrer to plaintiff's said amendment, refused to allow any evidence in support of said amendment. The plaintiff in error thereupon announced in open court that the only other evidence which she had was that introduced upon the former trial in support of her original petition, and as contained in the brief of evidence in the former appeal to the Court of Appeals of Georgia, and that as to said original petition and said evidence in support of the same, the judgment of the Court of Appeals appeared to be controlling; that the ruling of your honor on the defendant's demurrer, striking plaintiff's amendment, renders a further trial in this court useless. Thereupon the court, upon motion of counsel for the defendant, dismissed the plaintiff's case

for want of prosecution. To said judgment of the court dismissing plaintiff's case, the plaintiff in error did then and there except, now excepts and assigns error thereon upon the ground that said ruling is contrary to law. And plaintiff in error avers that the former ruling of said court sustaining said demurrer and striking the plaintiff's amendment, was erroneous, and that same entered into and affected and controlled the final disposition of said case in said court, and all of which orders plaintiff in error assigns as erroneous and contrary to law."

The bill of exceptions, properly construed, presents but one issue for determination, whether the court committed error in sustaining the demurrer and motion to strike the amendment in question. Upon the grant of a new trial resulting by reversal of the judgment of the lower court or otherwise, the case is from then on a de novo proceeding in so far as the right to amend by supplying additional, germane allegations of fact to the original petition is concerned, and for the purpose of introducing competent and relevant testimony in support of the allegations of the original petition or the petition as amended. This principle needs no citation of authority. Such is the common and general practice. The striking of the plaintiff's amendment in this case did not prevent the plaintiff from introducing competent evidence in support of her original petition and in contravention and rebuttal of the allegations of the defendant's answer. Unless the amendment in question was necessary to open up some new avenue over which she proposed to transmit testimony which could not be introduced under the then existing petition and answer, it was proper for the court to strike it; otherwise, it was error. In order to decide this question it is best here to relate the material portions of the amendment which was stricken and the demurrer on which it was stricken, as well as the original answer of the defendant.

The amendment of the plaintiff was in substance: "That on or about March 24, 1938, Mr. L. D. Evans, manager of the defendant's branch office in Augusta, in company with Mr. J. J. Avery, another agent of the defendant, came to plaintiff's home at 403 Ellis Street, for the purpose of soliciting plaintiff and her husband G. W. Glisson to purchase a policy of insurance; that said agents in their efforts to induce plaintiff and her husband to take a policy with them did then and there state that they had a very liberal and valuable policy

and that if plaintiff's husband was in sound health and good physical condition he would be eligible for and entitled to insurance, and that their company would issue to him a policy. That plaintiff's husband being at the time in a perfectly sound physical condition and free from injury or disease, and relying implicitly upon the representations of said agents, gave to them an application for a policy, and consented for their physician, Dr. Silver, to make a physical examination at plaintiff's home a day or two later. Attached hereto is a copy of said application and a copy of the medical report of said physician, designated as exhibits B and C respectively, and made a part hereof. That the answers to all questions which were propounded to or asked of plaintiff's husband by defendants' said agents and representatives were true and correct answers; that as to question No. 13 in said application, it appears from said application that no answer was made to this printed question, and plaintiff alleges that no such question was asked or propounded to the applicant, and that he made no answer to the said question; that as to question 12 (E) appearing in said medical report, plaintiff alleges that neither the said physician for the company nor any other agent or representative of the company asked or propounded such a question to the applicant, or ever mentioned to him the word 'syphilis' in connection with said application and medical statement, and the insured at no time made any answer to either of said questions; that the defendant's said agents and representatives filled out the said application and medical report, and knowing that the applicant at the time was in a sound and healthy physical condition, filled out the said application and medical report in a hasty and careless manner, and read them over to the applicant in said hasty and careless manner, but failed to read or mention questions 12 and 13 aforesaid, or any answer to either of said questions, and had the applicant to sign the same not knowing that such questions or answers were in said documents. Plaintiff further shows that the said district manager of the defendant in Augusta, and its said physician, Dr. Silver, knowing the facts hereinbefore set out to be true, and knowing that plaintiff and her husband procured the said policy in the utmost good faith, approved and recommended the payment of said claim to the home office in Macon; that notwithstanding this fact the defendant failed to pay said claim, and sent one of its representatives from Macon to

Augusta, who spend several days here looking up evidence with which to try and avoid payment of said claim, and the defense now set up is the result of that investigation. That the defendant's contention that plaintiff's husband had syphilis two years prior to making application for said policy is untrue; that the contention of the defendant that plaintiff's husband knew or was told that he had syphilis, is untrue; that since the date of plaintiff's marriage to the insured, he has been in perfect health and physical condition up to a few days before his death, caused by a brain injury; that as the issue of said marriage with the insured, plaintiff has three infant children which are in perfect health and always have been,—the dates of conception and birth being as follows: one, age 3, conceived April, 1936, born January, 1937; one, age 7, born January, 1934, conceived April, 1933; one, born October, 1931; that plaintiff has cohabited and lived with her said husband for over ten years continuously, and her husband has at all times been in good health and plaintiff has enjoyed good health all during said period of time, except for temporary indisposition which in nowise affected the health or general physical condition of plaintiff or her husband. That the insured procured said policy at the instance of the agents of the defendant as aforesaid; that both plaintiff and the insured acted in the utmost good faith in making application for the same, and answered truthfully and correctly all questions which they had an opportunity to answer and that were propounded to them as aforesaid; that the insured and plaintiff were misled and deceived by the artifice, schemes, and device of the defendant in the manner aforesaid, and the defendant has waived and is estopped and should not now be heard to assert or set up, as a defense in this case, the questions and answers purporting to be those of the insured in questions 12 and 13 of said application and medical report. Plaintiff further shows to the court that under the standard provisions of said policy of insurance the defendant can not avoid said policy except for actual fraud on the part of the insured in procuring said policy, and there is no contention or charge that the insured perpetrated any fraud upon the company in procuring said policy of insurance, the pertinent provisions of said policy as to fraud being as follows: 'Fraud. All statements made by the insured in the applications herefor shall, in the absence of fraud, be deemed representations and not warranties, and no

such statement shall void this policy unless contained in such application. If the policy shall have been obtained by fraud, the liability of the company under this policy shall be limited to the amount of the premiums paid hereon, with simple interest at the rate of 6% per annum.' That the said standard provisions of said policy is binding upon the defendant, irrespective of any provisions in said application to the contrary, under the universal rule that policies of insurance will be construed against the company and in favor of the beneficial interests intended, in cases of ambiguity or inconsistency."

To the above amendment the defendant specially demurred as follows: "That the allegations of said petition are not of facts essential to the setting forth of a cause of action, but constitute only evidence which at the most is in the nature of a rebuttal to the answer filed by the defendant to the plaintiff's petition, and that under the laws of pleading of the State of Georgia there is no provision for the filing of a rebuttal by the plaintiff. That the allegations in said amendment are of facts which are immaterial, irrelevant, and constitute surplusage to the plaintiff's cause of action as set forth in her petition, and that said facts neither change nor add to the cause of action as originally set forth. That the surplus and immaterial matter thus pleaded in said amendment is prejudicial in that it sets forth alleged facts calculated to influence the jury, and evidence supporting the facts thus alleged would be irrelevant and inadmissible in the trial of the case and therefore can not be pleaded."

We quote from the answer of the defendant as follows: "Answering said petition further this defendant says: It is true that on March 24th, 1938, George William Glisson applied to defendant for policy of insurance in the sum of $1000. Said application was in writing and is attached to the policy sued on and a copy thereof is attached hereto and made part of this answer. Defendant further says that on March 27th, 1938, George William Glisson appeared before Dr. D. M. Silver, medical examiner of this company, and made answer in writing to certain questions propounded by said medical examiner in writing, a copy of said questions and answers being attached to said policy and made part thereof and a copy thereof being attached to this answer. Defendant further shows that in said signed application, dated March 24th, 1938, the insured

represented in paragraph 13 as follows, to wit: 'I am not . . nor have I received or been advised to seek medical or surgical attention or advice within the past five years.' Defendant further shows that in said statement to its medical examiner insured was asked the question, 'Have you ever had syphilis?' To which question the insured answered, 'No.' Relying on the truth of said representations, this defendant issued the said George William Glisson the policy of insurance sued on. This defendant further says that said answers and representations were false, and were made by the insured with knowledge of their falsity, in that during the period between January 12th, 1937, and July 26th, 1938, the insured received at the University Hospital in Augusta twelve treatments of neosalvarsan; and were further untrue in that on January 19th, 1937, a blood test taken at said University Hospital of the blood of the said George William Glisson showed a 4-plus Wassermann and a 4-plus Kahn, which tests showed that on said January 19th, 1937, the said George William Glisson did have syphilis. Defendant further shows that said questions were material and the answers thereto false, and that said policy was issued in reliance upon the truth of said answers and representations, and for the reasons alleged said policy was void and of no effect, and that there is no liability on the defendant thereunder. Defendant further shows that it did not know of the falsity of said representations and answers until after the death of the said George William Glisson, and that defendant immediately tendered to the beneficiary, the plaintiff in this case, all premiums paid under said policy with simple interest at the rate of 6 per centum per annum, which tender was by the plaintiff refused. Defendant here and now tenders to said plaintiff the amount of premiums paid, $20.70, together with 80 cents interest to this date at 6 per centum, making a total of $21.50, which amount is tendered into court together with this answer. Wherefore, having fully answered, this defendant prays to be hence discharged."

It will thus be seen with apparent clearness that the amendment alleged no germane new matter which improved her cause of action as originally laid. The petition and the affirmative answer made the issues for trial. The law regards the allegations of such defense as denied by the plaintiff, and permits her to introduce all necessary competent and relevant testimony to rebut or contravert

the defense. The amendment partakes, in its nature, of a replication. This is prohibited in this State. Code, § 81-311 provides: "No replication shall be filed. The petition and answer, without other course of proceeding, shall be sufficient to carry the cause to the jury." *Brown* v. *Globe & Rutgers Fire Insurance Co.,* 161 *Ga.* 849, 854 (133 S. E. 260) ; *Commercial Casualty Insurance Co.* v. *Mathews,* 57 *Ga. App.* 446, 455 (195 S. E. 887). Code, § 81-115, provides: "No special pleadings shall be admitted in the superior courts, and every case shall go to the jury and be tried upon the petition, process, and answer alone." It has been held by this court in *Mashburn Drug Co.* v. *Valdosta Drug Co.,* 53 *Ga. App.* 88, 97 (184 S. E. 903), that an amendment to the petition which is in the nature of a replication to the answer, is within the discretion of the trial court to allow. So, if the relevant allegations of this amendment are not clearly a replication in the meaning of the Code sections above quoted, the amendment was certainly of such a kindred degree to a plea of replication that the trial judge did not err in dismissing it. It certainly contained surplus allegations, if not those which were irrelevant and which constituted surplusage.

It is insisted that the original answer did not sufficiently contain allegations of fraud on the part of the plaintiff in the procurement of the policy, and that therefore in order for the plaintiff to prove the fraudulent conduct of the agents of the company in the procurement of the policy this amendment was necessary, and that the allegations of the amendment as to the fraudulent conduct of the agents of the defendant, at the time the policy was procured and after the death of the insured, were the exclusive means by which this testimony could reach the jury. We disagree with this view. See, in this connection, *Tolbert* v. *Caledonian Insurance Co.,* 101 *Ga.* 741, 746 (28 S. E. 991) ; *Columbian National Life Insurance Co.* v. *Mulkey,* 19 *Ga. App.* 247 (91 S. E. 344) ; *Supreme Conclave Knights of Damon* v. *Wood,* 120 *Ga.* 328 (47 S. E. 940) ; *National Life & Accident Insurance Co.* v. *Gordon,* 183 *Ga.* 577 (188 S. E. 894) ; *Northwestern Life Insurance Co.* v. *Montgomery,* 116 *Ga.* 799 (2) (43 S. E. 79). The cases of *Clubb* v. *American Accident Co.,* 97 *Ga.* 502 (25 S. E. 333) ; *German American Mutual Life Association* v. *Farley,* 102 *Ga.* 720 (29 S. E. 615) ; *Travelers Protective Association* v. *Belote,* 21 *Ga. App.* 610 (94 S. E. 834) ; *Life & Casualty Insurance Co.* v. *Gaines,* 59 *Ga. App.* 545 (2 S. E. 2d, 153) ; and

*Bankers Health & Life Insurance Co.* v. *Kimberly,* 60 *Ga. App.* 128 (3 S. E. 2d, 148) announce no ruling contrary to what is held in this opinion. In those cases the courts had under consideration substantive law, as to the merits of the cases developed at the trial; whereas we have for consideration only adjective law, involving only procedure law. We are not unmindful that in the *Kimberly* case, supra, the court did discuss the time in which an amendment should be filed, but that is not pertinent to the question before us.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*