**33929.   C. M. MILLER CO. INC. *v.* RAMEY.**

DECIDED APRIL 11, 1952.

*Logan & Scott,* for plaintiff in error.

*Kimsey & Crawford,* contra.

FELTON, J. It appears that, at the time of the sale on December 15, 1948, the plaintiff knew that the flour was subject to condemnation as being unfit for human consumption, and he was under the impression that it had already been condemned. He represented to the defendant at the time he sold the flour to the defendant that the Government had nothing against the flour as long as it was sold for hog feed and not for human consumption. The agent of the U. S. Food and Drug Administration had already examined the flour, and on December 20, 1948, the libel of the United States against the flour was verified by the acting chief of the said Atlanta division of the Food and Drug Administration. The libel was filed on December 29, 1948, and on January 7, 1949, the deputy marshal came to the plaintiff's place of business to seize the flour, but was informed by the plaintiff that the flour was in the defendant's possession.

*There is nothing in the record to show that the condemnation proceeding was commenced by the Government authorities because the defendant had sold some 910 pounds of the flour for human consumption, as contended by the plaintiff. It is not*

*shown that any of the Government authorities concerned knew about this, but on the contrary, the condemnation papers showed that the flour was thought to be still in the plaintiff's possession, and the plaintiff was apparently the first to inform the Government agents that the flour was in the defendant's possession on January 7, 1949. It was undisputed that the defendant first sold some of the flour, which its employees had determined to be uncontaminated, to the retail trade for consumption by humans, on December 22, 1948, after the libel against the flour had been verified on December 20, 1948, and thus after the decision to commence the condemnation proceedings had been made.*

The seizure of the flour by the deputy marshal was a breach of the representation by Ramey, in the nature of a warranty of title, that the Government had nothing against the flour as long as it was sold for hog feed. It appeared that the expenses of securing the release of the flour were made so that it could be used for this purpose, as it was decreed by the District Court that the defendant should also pay the cost of inspection and supervision, by an agent of the Food and Drug Administration, of mixing the flour into stock feed.

The evidence was substantially the same on the second trial of the case as it was on the first. Therefore, the case is controlled by the ruling on its previous appearance in this court, that a verdict in favor of the plaintiff for $7.33 was demanded, with costs accruing after the defendant's payment of this amount into court to be assessed against the plaintiff, and that the court erred in overruling the defendant's motion for a new trial on the general grounds. *C. M. Miller Co.* v. *Ramey,* 82 *Ga. App.* 807 (62 S. E. 2d, 768). Under these circumstances, the special grounds of the motion for a new trial, complaining of the charge of the court to the jury, need not be considered. It was not error to allow the amendment to the petition, setting up matter in replication to and in denial of the plea of setoff. *Mashburn Drug Co.* v. *Valdosta Drug Co.,* 53 *Ga. App.* 88, 97 (184 S. E. 903); *Murphey* v. *Harker,* 115 *Ga.* 77, 90 (41 S. E. 585). The court did not err in refusing to allow the opinion of this court in the first appeal of the case to be read to the jury. *Hudson* v. *Hudson,* 90 *Ga.* 581 (3) (16 S. E. 349).

*Judgment reversed. Sutton, C.J., and Worrill, J., concur.*